**Opinion issued November 7, 2013**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-13-00123-CV

————————————

## IN RE TEXAS WINDSTORM INSURANCE ASSOCIATION, Relator

---

### Original Proceeding on Petition for Writ of Mandamus

---

### DISSENTING OPINION

Because the majority substitutes its factual determinations in place of those made by the respondent trial court,[1] does not follow the well-settled standard for reviewing the trial court's challenged order on the petition for a writ of mandamus filed by relator, Texas Windstorm Insurance Association ("TWIA"), and misapplies the governing law, I respectfully dissent.

---

[1]     The Honorable Susan Criss of the 212th District Court of Galveston County, Texas.

Had I sat as the fact-finder below and been in a position to judge the credibility of the witnesses, I, like the majority, might have weighed the evidence differently and, thus, come to different legal conclusions. However, this was the trial court's legitimate function, which it performed after an extensive evidentiary hearing in which it heard from the witnesses and observed their demeanor. And, in gauging whether a trial court has erred in making a legal ruling or a fact-finder has made an erroneous finding, we must apply the pertinent appellate standards of review.

The well-settled appellate standards of review "frame the issues, define the depth of review, assign power among judicial actors, and declare the proper materials to review." W. Wendell Hall, *Standards of Review in Texas*, 34 ST. MARY'S L.J. 1 (2002) (quoting Steven A. Childress, *Standards of Review in Federal Appeals*, UNIV. OF TEX. 2ND ANNUAL CONF. ON TECHNIQUES FOR HANDLING CIVIL APPEALS IN STATE AND FEDERAL COURT 4 (1992)). Standards of review are, in effect, checks on an appellate court's legitimate use of power because adherence to them restrains, in a very real way, the actions of the appellate court. As noted by Hall, "[s]tandards of review distribute power within the judicial branch by defining the relationship between trial and appellate courts." *Id*.

## Standard of Review

Mandamus is an extraordinary remedy that is available only when (1) a trial court clearly abuses its discretion and (2) there is no adequate remedy by appeal. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex. 2004). A trial court clearly abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992). In regard to its determination of legal principles, "[a] trial court has no 'discretion' in determining what the law is or applying the law to the facts." *In re Prudential*, 148 S.W.3d at 135 (quoting *Walker*, 827 S.W.2d at 840). And neither does an appellate court.

In regard to fact issues and matters committed to a trial court's discretion, a reviewing court may not legitimately substitute its judgment for that of the trial court. *See Walker*, 827 S.W.2d at 839. Rather, the reviewing court is legally bound to defer to the trial court's resolution of factual matters, and it may not set aside a trial court finding unless it is clear from the record that the trial court could have reached but one decision. *See id.* at 839–40. And a reviewing court may not issue mandamus relief for an abuse of discretion merely because it disagrees with the trial court's decision if that decision was within the trial court's discretionary authority. *See Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex. 1991).

Critical in determining whether the respondent trial court clearly abused its discretion in this case, we must respect that "[i]t is well established Texas law that an appellate court may not deal with disputed areas of fact in an original mandamus proceeding." *In re Angelini*, 186 S.W.3d 558, 560 (Tex. 2006). Simply put, an appellate court may not legitimately reconcile disputed factual matters in a mandamus proceeding. *See Hooks v. Fourth Court of Appeals*, 808 S.W.2d 56, 60 (Tex. 1991). As noted by two of the concurring justices in *Angelini*, once the court reached the conclusion "that mandamus relief should be denied because factual disputes exist[ed]," there was no further controversy before it. 186 S.W.3d at 561 (Johnson, J., joined by O'Neill, J., concurring). And the author of *Angelini* later explained that even if fact findings "may be wrong," an appellate court, "for purposes of . . . mandamus proceeding[s]," "must take them as true." *In re TXU Elec. Co.*, 67 S.W.3d 130, 145 (Tex. 2001) (Brister, J., concurring). Accordingly, if the record contains legally-sufficient evidence "both against and in support of the trial court's decision then mandamus will not lie because weighing conflicting evidence is a trial court function." *In re Pirelli Tire, L.L.C.*, 247 S.W.3d 670, 686 (Tex. 2007). Evidence is legally sufficient if it would "enable reasonable and fair-minded people to differ in their conclusions." *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005).

4

## Background

In the underlying lawsuits,[2] real parties in interest, the City of Santa Fe ("the City") and its attorney, Craig Eiland,[3] moved to disqualify attorney Christopher Martin and the law firm of Martin, Disiere, Jefferson, & Wisdom, L.L.P. ("MDJW") from representing TWIA on the ground that Martin "has an undisclosed conflict of interest," which violates the Texas Disciplinary Rules of Professional Conduct[4] and "prevents him, or his law firm, from representing TWIA as he and his firm cannot meet the qualifications to be legal counsel required by the Texas Administrative Code."[5]

In their motion, the City and Eiland asserted that in January 2011, Eiland, who serves on the Plaintiffs' Steering Committee in the underlying Hurricane Ike litigation against TWIA, "hired" Martin "to provide an expert opinion regarding

---

[2] The underlying cases are *City of Sante Fe v. Texas Windstorm Insurance Association*, Cause No. 12CV2015 in the 56th District Court of Galveston County, Texas and *In re: Hurricane Ike Litigation*, Cause No. 09CV0417 in the 212th District Court of Galveston County, Texas, the Honorable Susan Criss, presiding.

[3] Real parties in interest also include A. Craig Eiland Attorney at Law, P.C., the Plaintiff's Steering Committee, and the members of the class identified in the class action asserted in Plaintiffs' First Amended Petition in *City of Sante Fe v. Texas Windstorm Insurance Association*, Cause No. 12CV2015 in the 56th District Court of Galveston County, Texas.

[4] *See* TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 1.09(a), *reprinted in* TEX. GOV'T CODE, tit. 2, subtit. G, app. A (Vernon 2005) (Tex. State Bar R. art. X, § 9)).

[5] *See* 28 TEX. ADMIN. CODE § 5.4001(b)(4)(C) (2012) (Tex. Dep't of Ins., Tex. Windstorm Ins. Ass'n Plan of Operation).

TWIA's failure to pay sales tax and contractor's overhead and profit to a government entity such as [the City]" and to provide legal advice "regarding an insured's obligation to pay certain components of a property claim when the insured doesn't actually incur the cost of the line item in question." The City and Eiland argued that Martin owes Eiland a duty of confidentiality concerning strategy and the confidential information Martin obtained because during his "employment, as an expert for Eiland, Martin was made privy to confidential information and issues, including strategy and handling of cases against TWIA."

The City and Eiland asserted that Martin, in regard to Hurricane Ike litigation, had specifically "advised" Eiland about causes of action for failure to pay sales tax to governmental units, and Martin recommended not pursuing such causes. Rather, Martin recommended that Eiland pursue on behalf of his clients causes of action for failure to pay contractor's overhead and profit, even for government entities. Eiland acted on Martin's advice, and he incorporated Martin's opinions into a demand letter that he drafted on behalf of Galveston County and sent to TWIA. The City and Eiland argued that Martin and MDJW's representation of TWIA in the underlying cases violates the Texas Disciplinary Rules of Professional Conduct[6] because MDJW's representation is adversely and materially limited by Martin's duty of confidentiality to Eiland. And the City and

---

[6] *See* TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 1.09(a).

Eiland further argued that "MDJW's loyalty to TWIA would be impaired as it may not be able to recommend certain courses of action to TWIA because of Martin's legal responsibilities to Eiland."

In its response to the motion to disqualify, TWIA asserted that "[t]here is not now, nor has there ever been, an attorney-client or privileged relationship between [the City] and [Martin]" and "Martin has never been made privy to any confidential client information which would relate to [the City] or any of the plaintiffs who now have suits pending against TWIA." TWIA further asserted that "Martin has never been retained as an expert by [the City] or any other individual or entity with lawsuits pending against TWIA." Although Martin "provided personal opinions to his professional acquaintance, [Eiland], on prior occasions, only one instance involved TWIA," it "did not involve a lawsuit," and "Martin was not made privy to any confidential or privileged information." Rather, according to TWIA, "Martin offered assistance to his friend regarding industry standards as to whether sales tax would be paid on an insurance claim filed by a governmental entity who would never incur such costs." And "Martin was not compensated for his opinions nor was the information he was provided for review confidential."

At the trial court's hearing on the motion to disqualify, both Eiland and Martin offered their conflicting testimony in support of and consistent with the factual assertions made in their respective motion and response. Critical to the trial

court's fact findings and legal conclusions in favor of the City and Eiland, Eiland testified that he had hired Martin to provide him with expert legal advice, not only for himself on how to better pursue Hurricane Ike claims, but also to assist him to better represent his current and future clients on Hurricane Ike claims.

Eiland expressly testified that, in regard to his representation of Galveston County against TWIA, he "retained" Martin for his "expertise" on tax and overhead and profit issues "to determine if" Galveston County "had any potential money due and owing." He explained that he hired Martin as "both" a "lawyer and expert." "I needed his expertise to advise me as a lawyer . . . on what to do and how to do it" and "as an expert in the litigation . . . ." He hired Martin both "to advise me and my firm in the representation of Galveston County and as an expert in the case . . . because I . . . want[ed] to be able to point to and rely upon him . . . [as] a [law] professor . . . [the] guy that [wrote] the book [on the subject]." In regard to their "oral agreement," Eiland "made it known to" Martin that he was representing Galveston County against TWIA. And Eiland incorporated Martin's opinions into his demand letter, which he forwarded to Martin for review and comments before sending it to TWIA on behalf of Galveston County.

Eiland explained generally that he had hired Martin to use his opinions on behalf of his clients in his "negotiations with Texas Windstorm" and other insurance companies in Hurricane Ike litigation. From January 2011 through

December 2011, Eiland discussed, on behalf of his clients, with Martin "other issues" and "confidential information." And, in regard to "the scope of" his "engagement" of Martin, Eiland explained that he was "seeking guidance from [Martin] that would help structure how" Eiland's "law firm operated in terms of what cases and types of cases" he "took in," how he "would handle" them, and how he would "structure [his] litigation strategies." Moreover, Eiland testified that, "based on the facts," the matters before the trial court were "substantially related to matters in which [Martin] gave [Eiland] specific advice, apart from his advice to [Eiland's] law firm." And he noted that the overhead and profit issue addressed by Martin for him is one of the "exact issues" in the underlying cases.

James McCormack, former Chief Disciplinary Counsel for the State Bar of Texas, testified as an expert witness on behalf of the City and Eiland. McCormack explained that he had evaluated the evidence concerning whether an attorney-client relationship existed between Eiland and Martin, and he opined that "there was an attorney-client relationship" between the two. McCormack further opined that, based on his review of the evidence, the prior Galveston County case, in which Eiland represented the County against TWIA, and the underlying cases are "substantially related." TWIA's own expert witness, attorney Michael Quinn, testified to numerous similarities between the prior Galveston County case and the underlying cases.

In its order disqualifying Martin and MDJW from representing TWIA, the trial court, in pertinent part, found and concluded as follows:

1. Martin and [MDJW] *entered attorney-client relationships* with Craig Eiland and A. Craig Eiland Attorney at Law, P.C. (collectively "Eiland") *concerning multiple matters*.

. . . .

6. Eiland *communicated confidential information to Martin and [MDJW] in the course of Martin and [MDJW]'s representation of Eiland*, including concerning the County of Galveston insurance claims that Eiland handled against TWIA.

7. Eiland also communicated confidential information to Martin and [MDJW] in the course of Martin's service as an expert witness in connection with Eiland's representation of Galveston County. In the Galveston County matter, Martin served as lawyer for Eiland and Eiland's firm and for Eiland's client (the County of Galveston) and as expert witness. Martin issued a written report for Eiland and Eiland's firm and Eiland's client in that matter. Eiland requested that Martin send Eiland a bill for the work Martin had done on that matter.

8. The matters that were the subject of Martin and [MDJW]'s attorney-client relationship with Eiland included, but were not limited to, (a) *the potential recoveries for overhead and profit by Eiland's clients as a part of their Hurricane Ike damage claims against TWIA*, and (b) <u>*structuring Eiland's operations in terms of the case and types of cases that Eiland accepted, and structuring Eiland's negotiation and litigation strategies*</u>.

9. Whether Eiland's clients in this case and the other Movants are entitled to recover overhead and profit as a part of their Hurricane Ike damage claims against TWIA *is a significant, disputed issue in this case and TWIA's position on that issue is adverse to Eiland's and the other Movants' position on that issue*.

10. *Martin and [MDJW]'s representation of TWIA in this case is substantially related to Martin and [MDJW]'s prior representation of Eiland.* Martin's previous areas of representation of and advice to Eiland included representation

10

and advice concerning the Galveston County insurance claim against TWIA for Hurricane Ike damages. ***Yet now Martin and his firm are representing TWIA adverse to Eiland concerning the City of Galveston (and others') insurance claims against TWIA for Hurricane Ike damages***, including concerning the same or substantially similar elements of damages. Therefore, Martin and [MDJW]'s representation of TWIA in this case results in a violation of Texas Disciplinary Rule of Professional Conduct ("Disciplinary Rule") 1.09(a)(3).

11. 'Martin and [MDJW]'s representation of TWIA in this case in reasonable probability will result in a violation by Martin and [MDJW] of Disciplinary Rule 1.05. Therefore, ***Martin and [MDJW]'s representation of TWIA in this case results in a violation of Disciplinary Rule 1.09(a)(2)***.

12. The opinion that Martin provided to Eiland concerning the recovery of overhead and profit as a part of claims against TWIA in the course of Martin and [MDJW]'s prior representation of Eiland appears to be inconsistent with the position that TWIA has taken in previous claims handling of the same type of storm-damage claims. Martin's work product for Eiland is in issue in this case. Therefore, Martin and [MDJW]'s representation of TWIA in this case results in a violation of Disciplinary Rule 1.09(a)(1).

(Emphasis added.) In accord with its fact findings and legal conclusions, the trial court ruled that "[MDJW] and its attorneys are disqualified from representing [TWIA] in any of these consolidated cases [brought by Hurricane Ike claimants]."

### Disqualification

In its petition for a writ of mandamus, TWIA argues that the trial court abused its discretion in granting the City and Eiland's motion to disqualify Martin and MDJW because its "findings and conclusions do not support the relief [it] granted." Specifically, TWIA argues that "Disciplinary Rule 1.09 was not

11

violated" because the City and Eiland "failed to put forth any evidence to demonstrate that Eiland with the Plaintiffs' Steering Committee ever entered into a contractual relationship in which Martin agreed to render any professional services on behalf of Eiland or the Plaintiffs' Steering Committee." *See* TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 1.09(a). TWIA asserts that the City and Eiland "failed to demonstrate that confidential information had been given to Martin regarding the Galveston County case" and failed to show "a 'substantial relationship' between the facts" in the Galveston County matter and the pending litigation.

In their response, the City and Eiland note that appellate courts may not legitimately deal with disputed areas of fact in a mandamus proceeding and must defer to trial court findings, unless no evidence supports those findings. *In re Angelini*, 186 S.W.3d at 560. The City and Eiland argue that because the "trial court had a substantial evidentiary basis for ordering the disqualification" of Martin and MDJW and "legally sufficient evidence supports the trial court's findings," TWIA's requested relief should be denied.

The majority, after weighing the evidence, focusing on certain evidence and downplaying the City and Eiland's evidence, concludes that the "record does not support the trial court's legal conclusion that Martin's representation of Eiland was substantially related to his subsequent representation of TWIA." It bases its conclusion on its (1) assertion that the "relevant prior representation is Martin's

12

prior representation of Eiland, and not any prior representation of a policyholder actually asserting a first-party Ike claim against TWIA," (2) characterization of the similarities between the underlying cases and the "Galveston County matter" as "superficial," and (3) assertion that "the mandamus record does not even show that issues of a policyholder's entitlement to recover O&P or a governmental entity's entitlement to recover sales tax are significant disputes in all of the cases as to which the court granted the motion to disqualify." It then concludes that rule 1.09(a)(2) cannot serve as a ground for disqualification because the "same reasons that underlie our analysis of adversity and the substantial relationship test also lead us to conclude that the record does not support the trial court's determination of a reasonable probability that client confidences would be shared."

In pertinent part, rule 1.09, entitled "Conflict of Interest; Former Client," provides,

> (a) Without prior consent, a lawyer who personally has formerly represented a client in a matter shall not thereafter represent another person in a matter adverse to the former client:
>
>> (1) in which such other person questions the validity of the lawyer's services or work product for the former client;
>>
>> (2) if the representation in reasonable probability will involve a violation of Rule 105; or
>>
>> (3) if it is the same or a substantially related matter.

TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 1.09(a). The term "substantially related . . . . primarily involves situations where a lawyer *could have* acquired

13

confidential information *concerning a prior client that could be used either to that prior client's disadvantage or for the advantage of the lawyer's current client or some other person*." TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 1.09(a) cmt. 4B (emphasis added).

Here, there is some evidence in the record to support the trial court's finding that Martin and MDJW "entered [into] attorney-client relationships with [Eiland] . . . concerning multiple matters." Whether an attorney-client relationship exists is a question of fact. *Tanox, Inc. v. Akin, Gump, Strauss, Hauer & Feld, L.L.P.*, 105 S.W.3d 244, 256 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). At the hearing on the disqualification motion, Martin himself testified that he has in fact "performed legal services for Mr. Eiland and his law firm" regarding various Hurricane Ike claims. And the record shows that Martin billed Eiland for "attorney's fees" related to this work and Eiland paid Martin.

Eiland, at the hearing, testified that he retained Martin to advise him regarding Galveston County's Hurricane Ike claims. Specifically, Eiland, on January 14, 2011, sought legal advice from Martin regarding Galveston County's Hurricane Ike claims against TWIA, and they discussed Galveston County's claims against TWIA for overhead and profit. Eiland later sent to Martin an email, the subject line of which read: "Eiland re Confidential Consulting Expert FW: Galveston County–Texas Windstorm Insurance Association." In the email, Eiland

14

outlined the reasoning behind Galveston County's claim against TWIA and attached a proposed demand letter to be sent to TWIA. And Eiland requested Martin's "insight or opinions" regarding the letter. On January 20, 2011, Martin responded to Eiland with a detailed "report," in which Martin opined about the overhead and profit issues based on his "extended conversations with very senior executives" at various insurance companies. Eiland then used Martin's opinions in revising his demand letter to be sent to TWIA on behalf of Galveston County. And Martin testified that he typically billed Eiland for work once the matter at hand was complete or "after the amount [became] large enough that [he didn't] want to carry it anymore."

James McCormack, Eiland's expert, opined that Eiland and Martin had entered an "attorney-client relationship," based on Eiland's testimony that he had an "express agreement" with Martin regarding representation, Martin's email in which he had agreed to "issue a report" to Eiland, Martin's written report that followed, and the substance of that report having involved "very detailed legal advice and legal analysis." McCormack stated that there was "no question" that Martin had rendered "legal services" to Eiland.

From this evidence, the trial court, acting as fact finder, could have reasonably found that Eiland and Martin had formed an attorney-client relationship. *See Atl. Lloyd's Ins. Co. of Tex. v. Susman Godfrey, L.L.P.*, 982

15

S.W.2d 472, 478 (Tex. App.—Dallas 1998, pet. denied). To the extent that Martin presented conflicting evidence on the issue, it was within the purview of the trial court to resolve the conflicting evidence. *See Walker*, 827 S.W.2d at 839.

The record also supports the trial court's finding that "Eiland communicated confidential information to Martin and [MDJW] in the course of Martin and [MDJW]'s representation of Eiland, including concerning the County of Galveston insurance claims that Eiland handled against TWIA." Indeed, when an attorney "works on a matter, there is an irrebutable presumption that the lawyer obtained confidential information during the representation." *In re Guar. Ins. Servs., Inc.*, 343 S.W.3d 130, 134 (Tex. 2011) (emphasis omitted).

Regardless, the majority opines that there is "an apparent absence of true adversity between" Martin and the City and Eiland. Here, the trial court expressly found that, not only did Eiland actually communicate confidential information to Martin about the potential recoveries for overhead and profit by Eiland's clients as part of their Hurricane Ike damage claims against TWIA, but the subject matter of Martin's attorney-client relationship included:

> structuring Eiland's operations in terms of the case and types of cases that Eiland accepted, and structuring Eiland's negotiation and litigation strategies.

And the record reveals that Eiland so testified. Thus, not only could Martin have acquired confidential information concerning Eiland that could be used either to

16

Eiland's disadvantage or for the advantage of TWIA, Eiland testified that Martin actually did acquire such information. *See* TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 1.09(a) cmt. 4B. The trial court believed Eiland's testimony, and, thus, could have reasonably inferred that there is indeed true adversity between Martin and Eiland and his clients suing TWIA.

And, in regard to rule 1.09(a)(3), there is some evidence in the record to support the trial court's critical finding that "Martin and [MDJW]'s representation of TWIA in this case is substantially related to Martin and [MDJW]'s prior representation of Eiland." As is the issue of the existence of an attorney-client relationship, the issue of whether Martin's attorney-client relationship with Eiland is substantially related to Martin's representation of TWIA in the underlying cases is necessarily a question of fact. *See In re Butler*, 987 S.W.2d 221, 226–27 (Tex. App.—Houston [14th Dist.] 1999, orig. proceeding). In *Butler*, the court noted that "[f]actual determinations by the trial court may not be disturbed by mandamus review." *Id.* at 226. And it emphasized that "[d]isqualification of counsel is not improper . . . merely because factual differences exist between the prior and current representation." *Id.* After considering the "factual distinctions" and similarities in the pertinent lawsuits, the court concluded that "it was not *unreasonable* for the trial court" to have concluded that the "lawsuits dealt with substantially related matters." *Id.* (emphasis added). Accordingly, the court held

17

that the trial court did not abuse its discretion in granting the motion to disqualify in that case, and it denied mandamus relief. *Id.* at 227; *see also City of Keller*, 168 S.W.3d at 822 ("If the evidence at trial would enable reasonable and fair-minded people to differ in their conclusions, then [a fact-finder] must be allowed to do so.").

As explained by the Texas Supreme Court, matters are "substantially related," within the meaning of rule 1.09, "when a genuine threat exists that a lawyer may divulge in one matter confidential information obtained in the other because the facts and issues involved in both are so similar." *In re Epic Holdings, Inc.*, 985 S.W.2d 41, 51 (Tex. 1998). An actual disclosure of confidences "need not be proven; the issue is the existence of a genuine threat of disclosure because of the similarity of the matters." *Id.*

Here again, it is important to note that the trial court heard the testimony and considered the evidence presented in a hearing that lasted five days. As noted above, Eiland explained generally that he had engaged Martin to help him with Hurricane Ike claims because of Martin's insurance expertise and to utilize his opinions on behalf of his clients in his "negotiations with Texas Windstorm" and other insurance companies. And Eiland presented evidence of an ongoing attorney-client relationship, in which he discussed with Martin, on behalf of his clients, "other issues" and "confidential information" in several matters.

18

In regard to "the scope of" his "engagement" of Martin, Eiland specifically testified that he sought from Martin "guidance" that "would help structure how" Eiland operated his law firm "in terms of what cases and types of [Hurricane Ike] cases" he "took in," how he "would handle" them, and how he would "structure [his] *litigation strategies*." (Emphasis added.) And Eiland testified that, "based on the facts," the matters before the trial court were "substantially related to matters in which [Martin] gave [Eiland] specific advice, apart from his advice to [Eiland's] law firm." He also emphasized that the overhead and profit issue addressed by Martin for him is one of the "exact issues" in the underlying cases.

McCormack further opined that, based on his review of the evidence, the pertinent Galveston County case and the underlying cases are "substantially related" based on "five similarities," namely, the cases (1) involve first-party insurance claims, (2) against TWIA, (3) regarding properties in Galveston County, (4) that were damaged in Hurricane Ike, and (5) "involve common issues of overhead and profit and sales tax."[7] Notably, Michael Quinn, TWIA's own expert witness, testified to several similarities between the City's case and the prior Galveston County case, namely, both involve first-party insurance claims, by

---

[7] An expert may "apply legal terms to his understanding of the factual matters in issue." *Greenberg Traurig of New York, P.C. v. Moody*, 161 S.W.3d 56, 94 (Tex. App.—Houston [14th Dist.] 2004, no pet.).

19

governmental entities, against TWIA, arising from damage caused by Hurricane Ike, to property in the Galveston area.

The trial court also had before it the pleadings in the underlying cases, the pleadings in the prior City of Galveston and City of LaMarque cases, and the demand letter that Eiland sent to TWIA on behalf of Galveston County. And having considered this evidence and the testimony presented in the hearing, the trial court concluded that the matters have sufficient factual similarities. Namely, these matters, as noted by Eiland, involve

- first-party claims against TWIA;
- brought by a unit of government;
- arising out of Hurricane Ike;
- for breach of nearly identical standard commercial windstorm policies;
- for failure to properly pay overhead and profit and sales tax;
- for improper claims handling following Ike;
- for improper adjustment following Ike;
- for failure to pay all damages owed under the policy following Ike;
- seeking actual damages, penalties, and interest.

Thus, although ably and vigorously disputed by Martin, there is legally-sufficient evidence in the record to support the trial court's crucial finding that a substantial relationship exists between Martin's prior representation of Eiland and Martin's present representation of TWIA in the underlying cases. *See City of Keller*, 168 S.W.3d at 822 ("If the evidence at trial would enable reasonable and fair-minded

people to differ in their conclusions, then [a fact-finder] must be allowed to do so.").

Without reference to any authority, the majority argues that the above evidence "does not support the trial court's finding of a substantial relationship between Martin's representation of Eiland and his subsequent representation of TWIA" because "the evidence shows that Martin directly advised Eiland—and not Galveston County itself—regarding Eiland's representation of Galveston County." However, this distinction is of no consequence. That Martin advised Eiland directly and not Galveston County itself is not dispositive of the issue. The issue is whether Eiland furnished Martin with confidential information that Martin is bound to protect. *See Nat'l Med. Enters., Inc. v. Godbey*, 924 S.W.2d 123, 130–31 (Tex. 1996).

Again, the term "substantially related" primarily involves the fact-intensive inquiry of whether "a lawyer *could have* acquired confidential information concerning a prior client that *could be* used either to that prior client's disadvantage or for the advantage of the lawyer's current client or some other person." TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 1.09(a) cmt. 4B (emphasis added). This is precisely the point of the City and Eiland—that Martin, because of his previous attorney-client relationship with Eiland, is now in a position to use confidential information obtained from Eiland, as per his testimony,

21

regarding Eiland's negotiation and litigation strategies, to the disadvantage of Eiland and his clients and to the advantage of TWIA. Believing Eiland's testimony and crediting his evidence, the trial court so found, and it acted within its discretion in doing so.

Equally unavailing are the majority's assertions that "the similarities offered between the pending cases and the Galveston County matter are superficial and do not reveal a connection between any of the pending cases and Martin's advice to Eiland" and "the petitions in the mandamus record do not show that the issues of overhead and profit are central to all the cases as to which the [trial] court granted the motion to disqualify." As illustrated above, although hotly disputed, there is legally-sufficient evidence of the similarities found by the trial court, and the majority simply weighs the evidence differently.

In support of its position, the majority relies in large part upon *In re Drake*, 195 S.W.3d 232 (Tex. App.—San Antonio 2006, orig. proceeding). In *Drake*, the trial court entered an order disqualifying an attorney, who had once represented the Bexar County Appraisal District ("BCAD"), from representing plaintiffs in an ad valorem tax dispute against BCAD. *Id.* at 234. In reviewing the trial court's order, the court of appeals noted that although the trial court, in its order, emphasized "various similarities" between "past and present [legal] matters," it did not discuss any "similar underlying facts.'' *Id.* at 236. The trial court had specifically found

22

that while the attorney had represented BCAD, he "advised [BCAD] on the type of expert to retain or the type of expert or witness the district would not want questioned; and he engaged in various activities, including preparing and responding to discovery requests, formulating defense strategy, trial preparation, and attending settlement conferences." *Id.* at 236–37. However, the appellate court noted that the trial court's findings did not "relate to specific factual similarities between the [ad valorem tax] lawsuits and any lawsuits in which [the attorney] formerly represented BCAD." *Id.* Because the trial court's findings spoke "only generally of [the attorney's] representation of BCAD," the appellate court concluded that they fell short of the requisites of the established substantial relation standard. *Id.* at 237. More importantly, in *Drake*, "[i]t [was] *undisputed* that the facts, material to determining the issues to be litigated in the [present cases], [were] *not related to the facts in any prior case*" involving the attorney's representation of the BCAD. *Id.* (emphasis added).

Here, unlike in *Drake*, the trial court's findings "relate to specific factual similarities" between the underlying cases and Martin's prior attorney-client relationship with Eiland. Specifically, the trial court found that the matters made the subject of Martin and MDJW's "attorney-client relationship with Eiland included, but were not limited to, (a) the potential recoveries for *overhead and profit* by Eiland's clients as a part of their Hurricane Ike damage claims against

23

TWIA, and (b) structuring Eiland's operations in terms of the cases and types of cases that Eiland accepted, and structuring Eiland's *negotiation and litigation strategies*." (Emphasis added.) Contrary to the majority's assertions, there is evidence that the recovery of overhead and profit by Eiland's clients as a part of their Hurricane Ike damage claims against TWIA is a significant, disputed issue in the underlying cases. In accord with its findings, the trial court further concluded:

> Martin's previous areas of representation of and advice to Eiland included representation and advice concerning the Galveston County insurance claim against TWIA for Hurricane Ike damages. Yet now Martin and his firm are representing TWIA adverse to Eiland concerning the City of Galveston (and others') insurance claims against TWIA for Hurricane Ike damages, including concerning the same or substantially similar elements of damages.

In support of their arguments, the City and Eiland rely upon *In re Butler*, 987 S.W.2d 221 (Tex. App.—Houston [14th Dist.] 1999, orig. proceeding). In *Butler*, the relator argued that his lawsuit and the prior lawsuits at issue did not involve "the same or substantially related matters" because there were factual differences in the lawsuits. *Id.* at 226. As noted above, the appellate court explained that "[d]isqualification of counsel is not improper . . . merely because factual differences exist between the prior and current representation." *Id.* And it concluded that both the relator's lawsuit and the prior lawsuits "allege[d] breach of the duty to defend based on the erroneous denial of coverage by essentially the same insurer" and, "[i]nsofar as both lawsuits revolve around the reasonableness of

24

the insurer's conduct in relation to the underlying policy claims, they both involve similar liability issues and similar defenses and strategies." *Id.* In holding that the trial court did not abuse its discretion in disqualifying counsel, the appellate court concluded that "it was not unreasonable for the trial court to conclude that the [two lawsuits] dealt with substantially related matters." *Id*. Thus, the court of appeals in *Butler* appropriately limited its review to whether, based on the evidence, the trial court reasonably could have granted the motion to disqualify. *See id.* at 226–27.

Here, as in *Butler*, the trial court had before it evidence from which it could reasonably grant the City and Eiland's motion to disqualify Martin and MDJW. Thus, the trial court did not abuse its discretion in granting the motion to disqualify. *See id.* at 227.

## Conclusion

Although the fact issues were hotly contested below, there is legally-sufficient evidence to support the respondent trial court's critical findings that Martin and MDJW had an attorney-client relationship with Eiland "concerning multiple matters"; Eiland communicated confidential information to Martin in the course of his representation of Eiland, including concerning Galveston County insurance claims against TWIA; the matters that were the subject of Martin and MDJW's attorney-client relationship with Eiland included, but were not limited to "(a) the potential recoveries for overhead and profit by Eiland's clients as a part of

25

their Hurricane Ike damage claims against TWIA, and (b) structuring Eiland's operations in terms of the case and types of cases that Eiland accepted, and *structuring Eiland's negotiation and litigation strategies*"; the issue of whether Eiland's clients in the underlying cases are "entitled to recover overhead and profit as a part of their Hurricane Ike damage claims against TWIA is a significant, disputed issue" and "TWIA's position on the issue is adverse to Eiland's" and his clients' position; and "Martin and [MDJW]'s representation of TWIA in this case is substantially related to Martin and [MDJW]'s prior representation of Eiland." (Emphasis added.)

These findings support the respondent trial court's legal conclusion that Martin and MDJW's representation of TWIA in this case results in a violation of rule 1.09(a)(3) and they are disqualified from representing TWIA in the underlying cases. Accordingly, I would hold that the respondent trial court did not abuse its discretion in entering its order disqualifying Martin and MDJW from representing TWIA in the underlying cases. *See In re Butler*, 982 S.W.2d at 226–27.

In reaching its contrary conclusion, the majority substitutes its factual determinations in place of those made by the respondent trial court. Thus, the majority not only misapplies the governing law, it fails to correctly apply and follow the well-settled standard for reviewing the trial court's challenged order. And it usurps the power of the respondent trial court, which acted within its

26

discretion.  *See In re Pirelli Tire, L.L.C.*, 247 S.W.3d at 686 ("If the record contains legally sufficient evidence both against and in support of the trial court's decision then mandamus will not lie because weighing conflicting evidence is a trial court function."); *see also In re Angelini*, 186 S.W.3d at 560 ("It is well established Texas law that an appellate court may not deal with disputed areas of fact in an original mandamus proceeding.").  Thus, the majority has committed an error of such importance to the jurisprudence of the state that it should be corrected.  *See* TEX. GOV'T CODE ANN. § 22.001(a)(6) (Vernon 2004).

Terry Jennings
Justice

Panel consists of Justices Jennings, Bland, and Massengale.

Jennings, J., dissenting.

27