**Opinion issued October 13, 2015**



In The

# Court of Appeals

For The

# First District of Texas

————————————

**NO. 01-15-00495-CV**

————————————

## IN THE INTEREST OF KIMBERLEY TRIMMER-DAVIS, Relator

---

### Original Proceeding on Petition for Writ of Mandamus

---

## MEMORANDUM OPINION

By petition for writ of mandamus,[1] Kimberley Trimmer-Davis challenges

the trial court's January 14, 2015 order disqualifying the Ogg Law Firm and Kim

K. Ogg from representing Trimmer-Davis in her discrimination and retaliation

lawsuit against the City of Houston. Trimmer-Davis asserts that the trial court

---

[1]     The underlying case is *Kimberley R. Trimmer-Davis v. City of Houston*, cause
number 2010-11410, pending in the 295th District Court of Harris County, Texas,
the Honorable Caroline Baker presiding.

abused its discretion because there is no disqualifying conflict of interest and because the City failed to show actual prejudice. We conditionally grant the petition for writ of mandamus.

### Background

Trimmer-Davis, a former employee of the Houston Police Department ("HPD"), sued the City, alleging that she was discriminated against because of her female gender and retaliated against when she complained about the discrimination. During the course of the lawsuit, Trimmer-Davis deposed one of her former supervisors who allegedly participated in the discrimination and retaliation, Captain Dwayne Ready. At the time of Ready's deposition, Trimmer-Davis was represented by ChiQuia Roberson. Trimmer-Davis later engaged Kim K. Ogg and the Ogg Law Firm to represent her.

After Ready was served a trial subpoena that indicated that Trimmer-Davis was represented by Ogg, the City moved to disqualify Ogg and her firm, alleging that she had previously represented Ready. Specifically, the City alleged in its motion that Ready had consulted Ogg in 2008 in connection with a disciplinary action that he was facing at that time.

The City attached Ready's affidavit to its motion, in which he averred:

In September 2008, I consulted with Ms. Ogg seeking legal advice concerning a matter for which I received [a] 90-day temporary suspension in 2008. I paid Ms. Ogg $250 for her legal services for consulting with me regarding this matter. My communications with

2

Ms. Ogg were confidential, and were made for the purpose of seeking legal advice from Ms. Ogg in connection with that matter.

The City's position was that Ready was Ogg's former client as a result of this consultation, and that pursuant to Rules 1.05, 1.06, and 1.09 of the Texas Disciplinary Rules of Professional Conduct,[2] Ogg should be disqualified from representing Trimmer-Davis because Ogg planned to impeach Ready with evidence of his 2008 discipline. There was no allegation that the facts giving rise to Ready's 2008 suspension—which was imposed because of his failure to report outside work—was in any way related to the facts giving rise to Trimmer-Davis's claims.

Trimmer-Davis filed a response to the City's motion arguing that the City had not established prejudice or shown a disqualifying conflict of interest. She attached an affidavit from Ogg, in which Ogg stated that she did not recall a consultation with Ready, but that she concluded from the fact that the City produced a $250 check from Ready to her, that she must have met with Ready for a "preliminary consultation," which lasted no more than one hour. She also testified that, to the extent she was aware of the allegations giving rise to the disciplinary action against Ready—"double dipping" or working extra jobs while on the clock with HPD—she learned of those facts from a newscast by Channel 13 investigative

---

[2] *See* TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 1.05, 1.06, 1.09, *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. A (West 2013).

3

reporter, Wayne Dolcefino. Ogg speculated that she probably discussed with Ready the "pros and cons of appealing his anticipated punishment," because she had previously represented two other police officers in similar appeals. She believed that "Captain Ready may have sought advice on the arbitration appeal process for the purpose of determining whether or not to appeal."

Ultimately, Ready accepted a 90-day suspension for the unreported outside work and did not file an appeal. Ready, although designated as a witness in the trial, has not intervened to assert any attorney-client privilege between himself and Ogg. He did, however, provide the affidavit that was attached to the City's motion.

Without an evidentiary hearing, the trial court granted the motion to disqualify. Trimmer-Davis then filed this original proceeding to challenge the trial court's order disqualifying Ogg and her firm.

## Discussion

In several related issues, Trimmer-Davis contends the trial court abused its discretion in disqualifying Ogg and her firm and that Trimmer-Davis has no adequate remedy by appeal.

### A.     Standard of Review and Law on Disqualification

"Mandamus relief is proper to correct a clear abuse of discretion when there is no adequate remedy by appeal." *In re Frank Motor Co.*, 361 S.W.3d 628, 630

4

(Tex. 2012) (orig. proceeding). "A trial court abuses its discretion if it reaches a decision so arbitrary and unreasonable as to constitute a clear and prejudicial error of law, or when it acts without reference to any guiding rules or principles." *In re Tex. Windstorm Ins. Ass'n*, 417 S.W.3d 119, 128–29 (Tex. App.—Houston [1st Dist.] 2013, orig. proceeding) (internal citations omitted). A trial court has no discretion in determining what the law is or in applying the law to the facts. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135 (Tex. 2004) (orig. proceeding). "Mandamus is appropriate to correct an erroneous order disqualifying counsel because there is no adequate remedy by appeal." *In re Sanders*, 153 S.W.3d 54, 56 (Tex. 2004) (orig. proceeding).

"Disqualification of a party's counsel is 'a severe remedy.'" *In re Tex. Windstorm*, 417 S.W.3d at 129 (quoting *In re Nitla S.A. de C.V.*, 92 S.W.3d 419, 422 (Tex. 2002) (orig. proceeding)). "It can result in immediate and palpable harm, disrupt trial court proceedings, and deprive a party of the right to have counsel of choice." *In re Nitla*, 92 S.W.3d at 422. "Disqualification can delay proceedings in the trial court, require the client to engage a successor attorney, and, in appropriate cases, deprive the client of work product done on his behalf by the disqualified attorney." *In re Tex. Windstorm*, 417 S.W.3d at 129 (citing *In re George*, 28 S.W.3d 511, 515, 518–19 (Tex. 2000) (orig. proceeding)). "Because of the serious consequences of disqualification of opposing counsel, such motions can

5

be misused for delay or to exert inappropriate leverage to force a settlement." *Id.* "The law strongly discourages the use of motions to disqualify as tactical weapons in litigation." *Id.*

The movant bears the burden of proof on a disqualification motion. *Id.* (citing *In re EPIC Holdings, Inc.*, 985 S.W.2d 41, 60 (Tex. 1998) (orig. proceeding)). "To prevent the abusive filing of such a motion for tactical reasons, the court must carefully evaluate the motion and record to determine if disqualification is warranted." *Id.* (citing *In re Nitla*, 92 S.W.3d at 422). The trial court "must strictly adhere to an exacting standard" in ruling on disqualification motions. *NCNB Tex. Nat'l Bank v. Coker*, 765 S.W.2d 398, 399 (Tex. 1989) (orig. proceeding). We review the trial court's ruling for abuse of discretion. *See id.* at 400 (trial court's "failure to apply the proper standard of law to the motion to disqualify counsel was an abuse of discretion").

"Although the disciplinary rules are not intended as standards for procedural decisions, courts often look to them as guidelines in deciding whether to grant a motion to disqualify counsel." *In re Tex. Windstorm*, 417 S.W.3d at 129 (first citing *In re Nitla*, 92 S.W.3d at 422; and then citing *Nat'l Med. Enters., Inc. v. Godbey*, 924 S.W.2d 123, 132 (Tex. 1996)). "When a movant seeks disqualification based on an alleged violation of a disciplinary rule, he must carry the burden to establish the violation with specificity." *Id.* (citing *Spears v. Fourth*

6

*Court of Appeals*, 797 S.W.2d 654, 656 (Tex. 1990). "Mere allegations of unethical conduct or evidence showing a remote possibility of a violation of the disciplinary rules" do not satisfy the exacting standard. *Spears*, 797 S.W.2d at 656. "In addition, the party seeking disqualification based on violation of a disciplinary rule must also 'demonstrate that the opposing lawyer's conduct caused actual prejudice that requires disqualification.'" *In re Tex. Windstorm*, 417 S.W.3d at 129–30 (first quoting *In re Nitla*, 92 S.W.3d at 422; and then citing *In re Meador*, 968 S.W.2d 346, 350 (Tex. 1998) ("a court should not disqualify a lawyer for a disciplinary violation that has not resulted in actual prejudice to the party seeking disqualification")).

## B. Former-client conflict

The City's disqualification motion alleged a former-client conflict. The applicable Disciplinary Rule of Professional Conduct provides:

Rule 1.09. Conflict of Interest: Former Client

(a) Without prior consent, a lawyer who personally has formerly represented a client in a matter shall not thereafter represent another person in a matter adverse to the former client:

(1) in which such other person questions the validity of the lawyer's services or work product for the former client;

(2) if the representation in reasonable probability will involve a violation of Rule 1.05; or

(3) if it is the same or a substantially related matter.

TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 1.09(a). Rule 1.05 provides that a lawyer shall not knowingly:

> (1) Reveal confidential information of a client or a former client to:
>
> > (i) a person that the client has instructed is not to receive the information; or
> >
> > (ii) anyone else, other than the client, the client's representatives, or the members, associates, or employees of the lawyer's law firm.
>
> (2) Use confidential information of a client to the disadvantage of the client unless the client consents after consultation.
>
> (3) Use confidential information of a former client to the disadvantage of the former client after the representation is concluded unless the former client consents after consultation or the confidential information has become generally known.
>
> (4) Use privileged information of a client for the advantage of the lawyer or of a third person, unless the client consents after consultation.

TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 1.05(b).

Although Trimmer-Davis challenges the trial court's implied finding that Ogg's consultation with Ready gave rise to an attorney-client relationship, we do not reach contested issues of fact in an original mandamus proceeding. *See In re Tex. Windstorm*, 417 S.W.3d at 130 (first citing *In re Pirelli Tire, L.L.C.*, 247 S.W.3d 670, 686 (Tex. 2007) (orig. proceeding); and then citing *In re Angelini*, 186 S.W.3d 558, 560 (Tex. 2006) (orig. proceeding)). For purposes of this mandamus review, we assume without deciding that Ready is Ogg's former client.

### 1. Is Ogg's representation of Trimmer-Davis "a matter adverse" to Ready?

A "fundamental precondition" to the application of Rule 1.09 is that the lawyer is representing a client in a matter adverse to the former client. *In re Tex. Windstorm*, 417 S.W.3d at 130; *see* TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 1.09(a); *see also* R. 1.09 cmt. 2 (Rule 1.09 "concerns the situation where a lawyer once personally represented a client and now wishes to represent a second client against that former client"). The City contends that Trimmer-Davis's suit is "a matter adverse" to Ready because Trimmer-Davis alleges that Ready was involved in the discrimination and retaliation against her. We conclude that Ogg's representation of Trimmer-Davis is not adverse to Ready "in any relevant sense" for purposes of Rule 1.09. *See In re Tex. Windstorm*, 417 S.W.3d at 130.

"For purposes of the ethical prohibition of Rule 1.09, adversity has been described as 'a product of the likelihood of the risk and the seriousness of its consequences.'" *Id.* at 130 (quoting *Godbey*, 924 S.W.2d at 132). Here, the only risk to Ready or the City alleged by the City is that Ready's credibility might be impeached at trial with evidence that he was previously disciplined for actions unrelated to those alleged in Trimmer-Davis's suit. There is no authority to support the City's position that impeaching Ready's credibility with evidence of his earlier discipline makes Ogg's representation of Trimmer-Davis adverse to Ready within the meaning of Rule 1.09.

9

The City does not dispute that Ready's discipline is a matter of public record. Indeed, were Trimmer-Davis to engage new counsel, that new counsel would still be able to impeach Ready with evidence of Ready's discipline. And the subject of Trimmer-Davis's suit, alleged gender discrimination and retaliation, is unrelated to the subject of Ready's discipline—his reporting of outside work.[3] Thus, the City failed to meet its burden to show that Ogg's representation of Trimmer-Davis was adverse to Ready as required by Rule 1.09. *See In re Tex. Windstorm*, 417 S.W.3d at 129 ("When a movant seeks disqualification based on an alleged violation of a disciplinary rule, he must carry the burden to establish the violation with specificity."). Accordingly, nothing in the mandamus record demonstrates the adversity required to support the application of Rule 1.09.[4] *See id.* at 130 (adversity is a "fundamental precondition" to application of Rule 1.09).

---

[3] In its response to the petition for mandamus, the City suggests for the first time that Ready consulted Ogg as a result of Trimmer-Davis's complaints of discrimination and retaliation. The City did not represent to the trial court that the subject-matter of the consultation was related to Trimmer-Davis's discrimination and retaliation claims, and the evidence presented in the trial court was that the subject of Ready's consultation was discipline related to his reporting of outside work.

[4] The City also moved to disqualify Ogg and her firm based upon Texas Rule of Disciplinary Procedure 1.06(b). Rule 1.06(b) pertains to current clients, and the City did not contend that Ready was a current client of Ogg's. *See* TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 1.06(b). But regardless, Rule 1.06(b), like Rule 1.09, requires adversity. *See id.*

## 2. Did the City demonstrate prejudice?

Even if the City had met its burden to show that Rule 1.09 applied, as a non-client movant, the City bore the burden to show actual prejudice to support the severe remedy of attorney disqualification. *See Coker*, 765 S.W.2d at 400; *In re Tex. Windstorm*, 417 S.W.3d at 133–34. Nothing in the mandamus record suggests that Ogg or her firm possesses any information as a result of her representation of Ready that will actually prejudice the City. The fact that Ready may be impeached with evidence of his discipline—a matter of public record—does not demonstrate that the City will suffer actual prejudice, particularly in light of the fact that Trimmer-Davis's new lawyer would also be able to impeach Ready with this evidence. The City did not identify any other consequence of Ogg's representation of Trimmer-Davis. Thus, no actual prejudice to the City has been shown so as to justify disqualification pursuant to Rule 1.09. *See, e.g.*, *In re Tex. Windstorm*, 417 S.W.3d at 133 (non-client movants did not meet burden to justify disqualification pursuant to Rule 1.09 where mandamus record did not show actual prejudice to them).

Accordingly, we hold that the trial court abused its discretion in granting the City's motion to disqualify.

11

## Conclusion

We conditionally grant Trimmer-Davis's petition for writ of mandamus and direct the trial court to vacate its order granting the motion to disqualify and enter an order denying the motion to disqualify. We are confident the trial court will promptly comply, and our writ will issue only if it does not.


Rebeca Huddle
Justice

Panel consists of Chief Justice Radack and Justices Bland and Huddle.