**Petition for Writ of Mandamus Denied and Memorandum Opinion filed August 25, 2016.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-16-00473-CV

---

## IN RE JOSE QUINTANILLA, Relator

---

**ORIGINAL PROCEEDING**
**WRIT OF MANDAMUS**
**507th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2015-76308**

---

## MEMORANDUM OPINION

On November 8, 2015, relator Jose Quintanilla retained attorney Michael G. Busby, Jr. and his firm, Busby & Associates, P.C. (collectively "Busby"), to represent him in the underlying divorce suit. Relator's wife, Silva Garcia, hired Busby three days later, on November 11, 2015. Subsequently, Busby returned Garcia's retainer and informed her that he could not represent her because he already represented relator.

On December 22, 2015, Busby filed an original petition for divorce on behalf of relator. Garcia filed her answer on April 1, 2016, and a motion to disqualify Busby on April 29. On May 12, 2016, Associate Judge Amy Perez disqualified Busby. At relator's timely request, District Judge Alyssa Lemkuil held a de novo hearing on May 26. Judge Lemkuil orally granted the motion to disqualify, and she signed the disqualification order on June 10, 2016.

On June 14, 2016, relator filed a petition for writ of mandamus in this court.[1] In the petition, relator asks this court to compel Judge Lemkuil to set aside her June 10, 2016 order granting the motion to disqualify his attorney. We deny the petition.

## BACKGROUND

Evidence was presented at the disqualification hearing that Silva Garcia met with a legal assistant, Mitan Sudatu, at Busby's law firm office three days after relator had retained the firm.[2] Busby was not present at the consultation and he did not meet Garcia.

Garcia brought to her consultation a copy of a 2013 divorce decree containing QDRO information, a warranty deed for the house, and a list of debts. Garcia and Sudatu went over the inventory during the meeting. Garcia and Sudatu discussed the fact that relator had been served in 2013, but that he did not respond.

---

[1] *See* Tex. Gov't Code Ann. § 22.221 (West 2004); *see also* Tex. R. App. P. 52.

[2] Julie Sanchez, a senior paralegal at the firm, testified that Garcia also met with an attorney, Paul Cazada, who was the only attorney working in the office the day Garcia was there. Garcia did not remember meeting with anyone other than Sudatu.

Sudatu told Garcia that the nearly eight-year separation of Garcia and relator "would be part of what they used in order to go in and get their [sic] divorce."

Garcia filled out an application "[t]hat was kind of extensive," but she did not remember filling out any other papers. Sudatu told Garcia that the firm would start working on the case in two or three days. Garcia paid the firm a $2,500 retainer on November 11, 2015.

The firm discovered the conflict in its representation of Garcia and relator three days after Garcia had met with Sudatu, but attempts to contact Garcia were unsuccessful. Garcia called the firm on November 25, 2015, because she had not heard from anyone there. Someone at the firm informed Garcia that her retainer would be returned due to a conflict of interest because relator had already hired the firm to represent him in the divorce.

Garcia testified that she asked about her files:

I'm concerned that my personal information is there and they're representing both of us. She told me that it had been destroyed. And I was just livid because — I'm like — how can I trust that it's been destroyed? Who — when did they find this out? When was anybody going to contact me to let me know this was going on?

Garcia did not know whether the firm had already worked on the case for her. The firm did not return the documents she provided to it. Garcia believed that Busby had possession of her information, which she characterized as "attorney-privileged information," because she gave it to Sudatu during the meeting at the firm's office. Garcia signed the employment contract, but it was not countersigned by any attorney at the firm.

3

In his review of the file, Busby saw only the intake form. According to Busby, either the other documents Garcia claimed she gave the firm would have been destroyed by Sudatu or Garcia was mistaken about having provided documents to the firm. Busby asserted that he did not have the documents that Garcia claimed created a conflict.

In his petition for writ of mandamus, relator contends that the trial court abused its discretion by disqualifying Busby because (1) Garcia did not show that a specific disciplinary ruled was violated, and merely alleging of a violation of the disciplinary rules is insufficient to support disqualification; (2) Garcia did not show that Busby's firm possessed confidential information or that she had been harmed; (3) there is no reasonable probability that the firm's employees will reveal Garcia's confidential information because they have no knowledge of, or access to, such information; (4) the firm withdrew from disqualification immediately; (5) the trial court did not consider alternatives to disqualification; and (6) Garcia did not move for disqualification in a timely manner.

### MANDAMUS STANDARD OF REVIEW

Mandamus is appropriate when the relator demonstrates that (1) the trial court clearly abused its discretion; and (2) the relator has no adequate remedy by appeal. *In re Reece*, 341 S.W.3d 360, 364 (Tex. 2011) (orig. proceeding). A trial court clearly abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law, or if it clearly fails to analyze the law correctly or apply the law correctly to the facts. *In re Cerberus Capital Mgmt., L.P.*, 164 S.W.3d 379, 382 (Tex. 2005) (orig. proceeding) (per curiam). It is well established that, if the trial court has abused its discretion

4

in ruling on a motion to disqualify counsel, mandamus is appropriate to correct the trial court's erroneous ruling because there is no adequate remedy by appeal. *In re Sanders*, 153 S.W.3d at 56; *In re Epic Holdings, Inc.*, 985 S.W.2d 41, 52 (Tex. 1998) (orig. proceeding).

ANALYSIS

## I. Whether Garcia Met Her Burden to Disqualify Busby

Disqualification of an attorney is a severe remedy. *In re Nitla S.A. de C.V.*, 92 S.W.3d 419, 422 (Tex. 2002) (orig. proceeding) (per curiam). Disqualification "can result in immediate and palpable harm, disrupt trial court proceedings, and deprive a party of the right to have counsel of choice." *Id.* "Because of the serious consequences of disqualification of opposing counsel, such motions can be misused for delay or to exert inappropriate leverage to force a settlement." *In re Tex. Windstorm Ins. Ass'n*, 417 S.W.3d 119, 129 (Tex. App.—Houston [1st Dist.] 2013, orig. proceeding). A motion to disqualify should not be used as a tactical weapon. *Schwartz v. Jefferson*, 930 S.W.2d 957, 960 (Tex. App.—Houston [14th Dist.] 1996, orig. proceeding).

The movant has the burden of proof on a disqualification motion, and the court must strictly adhere to an exacting standard in determining whether disqualification is warranted. *Tex. Windstorm Ins. Ass'n*, 417 S.W.3d at 129. When a movant seeks disqualification based on an alleged violation of a disciplinary rule, she must establish the violation with specificity. *Id.* In addition, the movant must demonstrate that the opposing lawyer's conduct caused actual prejudice requiring disqualification. *Nitla*, 92 S.W.3d at 422.

5

Relator contends that the trial court abused its discretion by disqualifying Busby (1) without utilizing an exacting standard or a showing of a violation of a disciplinary rule; and (2) basing the disqualification on nothing more than conclusory allegations and speculation. Garcia did not rely on a specific disciplinary rule in seeking disqualification of Busby. Although courts look to the Texas Disciplinary Rules of Professional Conduct to decide disqualification issues, those rules are merely guidelines, and not controlling standards, for disqualification motions. *In re Meador*, 968 S.W.2d 346, 350 (Tex. 1998) (orig. proceeding). "[A] court has the power, under appropriate circumstances, to disqualify an attorney even though he or she has not violated a specific disciplinary rule." *Id.* at 351. Thus, there is no requirement that the movant establish the violation of a disciplinary rule for a trial court to disqualify an attorney. *See id.* at 350 (observing that the court had previously held that a trial court abused its discretion in denying a motion to qualify an attorney even though the motion was not based on a specific disciplinary rule (citing *Nat'l Med. Enters., Inc. v. Godbey*, 924 S.W.2d 123 (Tex. 1996) (orig. proceeding))).

Although Garcia did not allege the violation of a specific disciplinary rule, we look to Rule 1.09 for guidance under the facts of this case. *See* Tex. Disciplinary Rules Prof'l Conduct R. 1.09, *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G, app. A (West 2013). Rule 1.09(a)(3) provides:

> Without prior consent, a lawyer who personally has formerly represented a client in a matter shall not thereafter represent another person in a matter adverse to the former client . . . if it is the same or a substantially related matter.

*Id.*

Relator argued at the hearing that Garcia had not retained Busby's firm because no one at the firm had signed the employment contract, although Garcia had signed it. The attorney-client relationship is a contractual relationship in which an attorney agrees to render professional services for a client. *Stephenson v. LeBouf*, 16 S.W.3d 829, 836 (Tex. App.—Houston [14th Dist.] 2000, pet. denied) (citing *Vinson & Elkins v. Moran*, 946 S.W.2d 381, 405 (Tex. App.—Houston [14th Dist.] 1997, writ dism'd by agr.)). To establish the attorney-client relationship, the parties must explicitly or by their conduct manifest an intention to create the relationship. *Id.* (citing *Vinson & Elkins*, 946 s.W.2d at 405). Whether an attorney-client relationship can be implied depends upon an objective standard, looking at what the parties said and did to support an agreement to enter into a relationship. *In re Baytown Nissan, Inc.*, 451 S.W.3d 140, 146 (Tex. App.—Houston [1st Dist.] 2014, orig. proceeding). One party's subjective belief that an attorney-client relationship was formed is not sufficient. *LeBlanc v. Lange*, 365 S.W.3d 70, 79 (Tex. App.—Houston [1st Dist.] 2011, no pet.). A question of fact exists when the evidence does not conclusively establish the existence of an attorney-client relationship. *Tanox, Inc. v. Akin, Gump, Strauss, Hauer & Feld, L.L.P.*, 105 S.W.3d 244, 254 (Tex. App.—Houston [14th Dist.] 2003, pet. denied).

On November 8, 2015, relator retained Busby's firm to represent him in obtaining a divorce from Garcia. On November 11, Garcia met with at least one employee of the firm (Sudatu) to obtain representation in obtaining a divorce from relator, and paid a $2,500 retainer. Sudatu stated that the firm would start to work on Garcia's divorce in two or three days. Under the objective standard discussed above, the trial court heard some evidence supporting an intention to create an attorney-client relationship between Busby's firm and Garcia, and it resolved any

factual dispute regarding whether such an attorney-client relationship existed in favor of Garcia. An appellate court may not resolve factual issues in a mandamus proceeding. *In re Angelini*, 186 S.W.3d 558, 560 (Tex. 2006) (orig. proceeding). Thus, we must credit the trial court's implied finding that Busby was Garcia's counsel, albeit of short duration.

Relator also disputes that there is a genuine threat that Busby may divulge confidential information he may have obtained in his brief representation of Garcia. In support of his position, relator submitted affidavits of attorneys, paralegals, and legal assistants employed at Busby's firm. Each affiant testified that he or she had no knowledge of, or access to, Garcia's confidential information. Two affiants were not employed at the firm at the time Garcia came to the firm's office. For further support, relator asserts that Garcia gave conflicting testimony about whether she provided confidential information to the firm, while Busby was certain that Garcia had not given him confidential information.

"The potential of intentional or inadvertent revelation of a former client's confidences exists each time an attorney undertakes representation of a client against a former client." *NCNB Tex. Nat'l Bank v. Coker*, 765 S.W.2d 398, 399 (Tex. 1989) (orig. proceeding). When the moving party proves a substantial relationship between the two representations, she establishes as a matter of law that an appearance of impropriety exists and is entitled to a conclusive presumption that confidences were imparted to the attorney. *Id.* at 400. "Although the former attorney will not be presumed to have revealed the confidences to his present client, the trial court should perform its role in the internal regulation of the legal profession and disqualify counsel from further representation in the pending

litigation." *Id.* Former clients generally are not required to disclose confidential communications with former counsel to make the showing of actual prejudice that is usually necessary to support the sever remedy of disqualification. *Tex. Windstorm Ins. Ass'n*, 417 S.W.3d at 132–33.

There is no dispute that Busby's representation of Garcia and relator occurred in the same matter. Garcia testified that she provided confidential information to the firm, and in any event the provision of such information is presumed as explained above. Although there was also contrary evidence, we may not deal with disputed issues of fact resolved by the trial court. *See Angelini*, 186 S.W.3d at 560. Thus, we must credit the trial court's implied finding that Garcia provided confidential information to Busby.

Although relator argues that the evidence shows there was no genuine threat that Busby or his firm would reveal Garcia's confidences because no firm employee had continuing knowledge of Garcia's confidential information, Garcia was not required to show that anyone at the firm would reveal her confidences. *See Coker*, 765 S.W.2d at 400; *see also Tex. Windstorm Ins. Ass'n*, 417 S.W.3d at 132–33. Therefore, under the facts of this case, the trial court did not clearly abuse its discretion in concluding that Garcia met her burden to disqualify Busby from representing relator.

## II.  Whether the Trial Court Should Have Considered Other Remedies

Relator contends that the trial court abused its discretion because it did not consider alternatives to disqualification such as questioning Garcia about the alleged confidential information she provided to the firm outside the presence of relator and Busby or inspecting the firm's files. *See Davis v. Stansbury*, 824

9

S.W.2d 278, 284 (Tex. App.—Houston [1st Dist.] 1992, orig. proceeding) (holding trial court abused its discretion by disqualifying wife's attorney, when husband admitted that he had not provided the attorney with any privileged information, and stating that court could have held an in-camera hearing in chambers, outside the presence of wife and her attorney, for husband to answer questions about unprivileged information that passed between him and his attorney, or conducted an in-camera inspection of the attorney's file if the documents were available).

As noted above, an attorney's former client is not required to disclose confidential communications with former counsel in order to show actual prejudice to support disqualification. *Tex. Windstorm Ins. Ass'n*, 417 S.W.3d at 132–33. Because the trial court did not abuse its discretion in concluding that Garcia met her burden of proving that disqualification is warranted, it was not necessary for the trial court to consider alternatives to disqualification.

## III. Whether Garcia Waived Her Disqualification Complaint

Relator contends that Garcia, by not timely filing her motion to disqualify, waived her complaint that Busby should be disqualified. "A party who fails to file its motion to disqualify opposing counsel in a timely manner waives the complaint." *Vaughan v. Walther*, 875 S.W.2d 690, 690 (Tex. 1994) (orig. proceeding) (per curiam).

Relator argues that the Busby firm discovered the conflict by November 14, 2015, three days after Garcia's consultation, and that its attempts to contact Garcia were unsuccessful. According to relator, Garcia learned of the conflict on November 25, 2015, when she called the firm. Busby filed relator's original petition for divorce on December 22, 2015, but Garcia did not file the motion to

10

disqualify until April 29, 2016. Therefore, relator contends that Garcia knew of the conflict as early as November 25, 2015, but waited to move for disqualification until April 29, 2016. *See Vaughan*, 875 S.W.2d at 690-91 (holding that movant waived her right to disqualify relator's attorney in child custody suit because she waited until the day of the final hearing to file a motion to disqualify, when she had been aware of the possible conflict of interest as early as the temporary hearing nearly seven months earlier); *Turner v. Turner*, 385 S.W.2d 230, 236 (Tex. 1964) (holding that movant waived her right to disqualification of opposing counsel by waiting to file motion to disqualify her husband's attorney more than eighteen months after she notified attorney that she had discharged him and hired other counsel to represent her). *Enstar Petroleum. Co. v. Mancias*, 773 S.W.2d 662, 664 (Tex. App.—San Antonio 1989, orig. proceeding) (per curiam) (holding that relator waived its right to disqualify entire law firm when it was aware of the disqualification issue as early as December 1988, "well in advance of the March 1989 trial setting").

The cases cited by relator in support of his waiver argument are distinguishable from this case. Garcia testified that she did not learn that the divorce suit had been filed until March 2016, when relator "showed up at [her] house" with a proposed decree and a waiver. Garcia states in her response that she was never served with citation, and no return of service is on file in the trial court. Relator does not dispute that Garcia was not served with citation.

Garcia filed an answer on April 1, 2016, and the motion to disqualify on April 29, 2016. Only four weeks passed between the date on which Garcia filed her answer, having not previously been served with the original petition Busby

11

filed on behalf of relator, and the date on which she filed the motion to disqualify Busby. Furthermore, Garcia did not wait until the eve of trial to file the motion to disqualify. Therefore, this record does not show that Garcia delayed in filing her motion to disqualify.

## CONCLUSION

Relator has not shown that the trial court abused its discretion by granting Garcia's motion to disqualify relator's counsel. Accordingly, we deny relator's petition for writ of mandamus.

PER CURIAM

Panel consists of Justices Busby, Donovan, and Wise.