**Opinion issued September 22, 2015**



In The

# Court of Appeals

For The

# First District of Texas

_____

### NO. 01-15-00016-CV

_____

### IN RE TEXAS TECHNICAL SERVICES, INC., Relator

---

**Original Proceeding on Petition for Writ of Mandamus**

---

**O P I N I O N**

In this original proceeding, relator Texas Technical Services, Inc. (TTSI),

seeks mandamus review of the trial court's October 6, 2014 order disqualifying the

law firm of Lambright & Associates ("Lambright") from representing TTSI in the

underlying proceeding.[1]  TTSI contends that Lambright should not have been disqualified or, in the alternative, that the trial court abused its discretion in disqualifying Lambright from acting as TTSI's counsel even outside the presence of the jury.  We hold that the trial court abused its discretion in disqualifying Lambright and, accordingly, we conditionally grant the writ of mandamus.

## Background

**The Employment Suit**

In 2012, after Derek Frantz left employment with TTSI and went to work for real party in interest, Parking Guidance Systems (PGS), TTSI sued PGS contending Frantz was violating non-compete and non-disclosure obligations.  The trial judge granted TTSI injunctive relief, enjoining Frantz from working on certain parking projects in Houston and surrounding counties.  PGS, with Frantz's involvement, continued to pursue a sole source contract for parking systems with Dallas-Fort Worth Airport (DFW).

Thereafter, Lambright attorneys sent multiple written communications to DFW regarding the employment suit and Frantz's alleged violations of the injunction.  For example, on November 22, 2013, a Lambright attorney wrote to DFW:

---

[1]  The underlying proceeding is *Parking Guidance Systems, LLC v. Texas Technical Services, Inc.*, No. 2014-16785, in the 133rd District Court, Harris County, Texas, the Honorable Jaclanel McFarland, presiding.

2

[W]e understand that Mr. Frantz has continuously worked on the DFW parking improvement project from Fall 2012 to at least Spring 2013, and that he is out there, once again, in direct violation of Court orders. TTSI respectfully requests you to honor the Courts' [sic] Orders and that you require your subcontractors to do the same. TTSI will endeavor to minimize the impact these issues have on your operations. Be advised, however, that should Mr. Frantz continue to violate the Orders of the 129[t]h District Court (of which you now have express knowledge), TTSI will proceed to enforce its judicially recognized rights against him and any third parties that aid or assist him.

Legal counsel for DFW responded to Lambright, expressing his view "that the [injunction] (in the form provided to me) probably does not preclude Mr. Frantz from participating in the [DFW] transaction." A Lambright attorney replied: "the two injunctions you have been sent clearly establish that DFW parking jobs are off-limits for Frantz." The attorney also told DFW's counsel to "deal with Mr. Frantz at your own risk."

On February 4, 2014, the Operations Committee of DFW recommended that the DFW Board of Directors award the DFW parking contract to PGS. Two days later, a Lambright attorney wrote to DFW's counsel:

We have learned that DFW intends to award the sole-source Terminal D parking guidance contract to Parking Guidance Systems, LLC-Derek Frantz'[s] (via his wife) company. Derek is heavily involved in this company, and now they have been joined in our lawsuit. I was under the impression from the below correspondence and past telephone conversations that DFW would not be doing business with Frantz. Given your explanation to me that the reason behind the sole source contract was that they were the contracting party on Terminal A, and that your concern was whether Derek Frantz could be involved in our litigation, I find it extremely interesting that

3

DFW decided to award it to PGS, who as an entity had no prior history with DFW (given the fact it was set up by Derek's wife and a friend only last May). Maybe your client's diligence as to the party they were contracting with (PGS) wasn't as thorough as it needed to be.

Shortly thereafter, DFW informed PGS that it was no longer going to be awarded the contract.

**The Underlying Suit**

PGS sued TTSI alleging tortious interference with a contractual and business relationship between PGS and DFW. PGS alleges that Lambright "engaged in a systematic and deliberate attempt to disrupt the business relationship between PGS and DFW Airport and [to] cause DFW to withdraw the contract award [from] PGS."

TTSI moved for summary judgment on PGS's tortious interference claim and on its affirmative defenses, and set the hearing on the motion for October 6, 2014. On September 29, 2014, PGS filed its response to TTSI's motion for summary judgment and also filed a motion to continue the hearing on the motion for summary judgment. On the same day, it filed its motion to disqualify Lambright and set it for hearing one hour before the trial court was to hear TTSI's motion for summary judgment. The basis for PGS's motion is that Lambright's attorneys' testimony is essential to prove PGS's interference claim, because it was the attorneys' communications with DFW that constituted the intentional act of

4

interference that caused PGS to lose the DFW contract. Therefore, PGS argued, Lambright was disqualified under the Texas Disciplinary Rules of Professional Conduct because its attorneys cannot act as an advocate and witness. *See* TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 3.08(a), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. A (West 2013).

On October 6, 2014, the trial court held a hearing on PGS's motion to disqualify. The trial court granted the motion to disqualify and continued the hearing on TTSI's summary judgment motion. The order granting PGS's motion to disqualify states, "it is ORDERED that Lambright & Associates be disqualified from representing Defendant in the above-referenced litigation."

TTSI moved for reconsideration of the order, arguing that the Lambright attorneys' testimony was not essential and that disqualification was not warranted. During the hearing on TTSI's motion to reconsider the trial court stated "My ruling stands. If y'all want to work on an order that says that you can work on a case but not be—not represent them in court in front of a jury, I don't really have a big problem with that. But you're still disqualified until y'all give me another order. Your motion to reconsider is denied at this point."

TTSI sought mandamus relief. It asks us to order the trial court to vacate the order disqualifying Lambright from representing TTSI in the underlying proceeding. In the alternative, TTSI requests that this Court "instruct Judge

5

McFarland to revise her disqualification order to permit Lambright & Associates to represent TTSI in all matters outside the presence of the jury."

## Standard of Review and Applicable Law

Mandamus is appropriate to correct an erroneous order disqualifying counsel because there is no adequate remedy by appeal. *In re Sanders*, 153 S.W.3d 54, 56 (Tex. 2004). We review disqualification orders under an abuse of discretion standard. *Id.*

Rule 3.08 of the Texas Disciplinary Rules of Professional Conduct states:

(a)    A lawyer shall not accept or continue employment as an advocate before a tribunal in a contemplated or pending adjudicatory proceeding if the lawyer knows or believes that the lawyer is or may be a witness necessary to establish an essential fact on behalf of the lawyer's client, unless:

> (1)    the testimony relates to an uncontested issue;

> (2)    the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony;

> (3)    the testimony relates to the nature and value of legal services rendered in the case;

> (4)    the lawyer is a party to the action and is appearing pro se; or

> (5)    the lawyer has promptly notified opposing counsel that the lawyer expects to testify in the matter and disqualification of the lawyer would work substantial hardship on the client.

TEX. DISCIPLINARY RULES PROF'L CONDUCT 3.08(a). Although Rule 3.08 was "promulgated as a disciplinary standard rather than one of procedural disqualification," Texas courts "have recognized that the rule provides guidelines relevant to a disqualification determination." *See Sanders*, 153 S.W.3d at 56 (citing *Anderson Prod. Inc. v. Koch Oil Co.*, 929 S.W.2d 416, 421 (Tex. 1996)).

The Texas Supreme Court has emphasized that "[d]isqualification is a severe remedy." *Id.* at 57 (quoting *Spears v. Fourth Ct. of App.*, 797 S.W.2d 654, 656 (Tex. 1990)). It can "cause immediate harm by depriving a party of its chosen counsel and disrupting court proceedings." *Id.* Consequently, in considering a motion to disqualify, the district court must strictly adhere to an exacting standard to discourage a party from using the motion as a dilatory tactic. *Spears*, 797 S.W.2d at 656. "'Mere allegations of unethical conduct or evidence showing a remote possibility of a violation of the disciplinary rules will not suffice' to merit disqualification." *Id.*

It is only appropriate to disqualify an attorney due to his status as a potential witness if the attorney's testimony is "necessary to establish an essential fact." *Sanders*, 153 S.W.3d at 57 (quoting TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 3.08(a)). The fact that an attorney serves, or may serve, as both a representative and as a witness does not in itself compel disqualification. *Id.*; *see also In re Garza*, 373 S.W.3d 115, 118 (Tex. App.—San Antonio, orig. proceeding) (stating

7

disqualification under Rule 3.08 is not appropriate unless party seeking disqualification establishes "a genuine need for the attorney's testimony and that the testimony goes to an essential fact"). Rather, the party requesting disqualification must demonstrate that the opposing attorney's dual roles as attorney and witness will cause the party actual prejudice. *Ayres v. Canales*, 790 S.W.2d 554, 557–58 (Tex. 1990).

## Analysis

PGS sought disqualification on the basis that the testimony of Lambright's attorneys was necessary to prove an act of willful and intentional interference, which is an element of PGS's tortious interference claim. TTSI argues that the trial court abused its discretion in disqualifying Lambright because the testimony of Lambright's attorneys is not essential to prove TTSI's alleged interference inasmuch as TTSI has produced the written communications between Lambright and DFW, and does not dispute their contents. TTSI asserts that the written communications "are what they are" and that the central contested issue in the case is causation, i.e., whether Lambright's communications caused DFW to rescind its award of the contract to PGS. This causation evidence, TTSI asserts, can only be established through testimony of DFW employees.

The elements of tortious interference with an existing contract are (1) an existing contract subject to interference, (2) a willful and intentional act of

8

interference with the contract, (3) that proximately caused injury, and (4) actual damages or loss. *Prudential Ins. Co. of Am. v. Fin. Rev. Servs, Inc.*, 29 S.W.3d 74, 77 (Tex. 2000). To prevail on its tortious interference claim, PGS bears the burden to prove that a contract existed between PGS and DFW, and that TTSI or its agent, Lambright, willfully and intentionally interfered with that contract and proximately caused DFW's termination of the contract with PGS, damaging PGS.

TTSI does not dispute the existence or content of its attorneys' written communications with DFW's counsel, but PGS nevertheless argues that it needs the testimony of Lambright's attorneys to establish that the alleged interference was willful and intentional. PGS also argues that it requires the testimony of Lambright because verbal communications occurred between Lambright and DFW. PGS contends that the Lambright attorneys' testimony is necessary because all of the communications with DFW were made by Lambright. We disagree.

Although PGS repeatedly asserted in the trial court and in its response to the mandamus petition that Lambright's attorneys' testimony is necessary to show that the alleged interference was willful and intentional, PGS never explained what essential facts it needs to prove through the testimony of the Lambright attorneys, or why the written communications would not be sufficient to establish an intentional act of interference. *See In re VSDH Vaquero Venture, Ltd.*, No. 05-14-00958-CV, 2014 WL 4262167, at *2–3 (Tex. App.—Dallas Aug. 28, 2014, orig.

proceeding) (mem. op.) (disqualification movant must identify the essential facts that attorney's testimony would establish). Simply stating that Lambright's attorneys' testimony is necessary to establish one of the elements of its interference claim, without further explanation, is insufficient to meet PGS's significant burden to show that the testimony is necessary to establish an essential fact. *See id.*; *In re Hormachea*, No. 04-04-00581-CV, 2004 WL 2597447, at *2 (Tex. App.—San Antonio Nov. 17, 2004, orig. proceeding) (mem. op.) (mere fact that attorney participated in allegedly defamatory press conference was not enough to prove that his testimony was "necessary" or "essential" in defamation suit against his clients).

Moreover, the fact that Lambright attorneys verbally communicated with DFW personnel, without more, does not demonstrate that the testimony of the Lambright attorneys is necessary to establish an essential fact. To the contrary, if PGS needs testimony about those verbal communications, PGS can elicit testimony from DFW personnel regarding these communications. *See Sanders*, 153 S.W.3d at 57 (trial court did not abuse discretion in denying motion to disqualify where there was no evidence testimony was not available from another source); *In re Stone*, No. 14-13-00311-CV, 2013 WL 1844267, at *2 (Tex. App.—Houston [14th Dist.] Apr. 19, 2013, orig. proceeding) (mem. op.) (disqualification improper where record shows that lawyer is not the only person who can testify regarding particular facts). Because PGS can procure testimony regarding the content of

these communications from another source, it has not met its burden to show that the testimony from Lambright's attorneys is necessary. *See In re Stone*, 2013 WL 1844267, at *2.

Thus, the record does not support the conclusion that testimony from Lambright's attorneys is "necessary to establish an essential fact" or that PGS genuinely needs the attorneys' testimony. TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 3.08(a); *Sanders*, 153 S.W.3d at 56 (fact that attorney serves, or may serve, as both a representative and as a witness does not in itself compel disqualification); *see also In re Garza*, 373 S.W.3d at 118 (disqualification is not appropriate unless party seeking disqualification establishes "a genuine need for the attorney's testimony"). Because "[d]isqualification is a severe remedy," and the record does not show any essential fact that could be established only by Lambright's attorneys' testimony, we hold that the trial court abused its discretion in disqualifying Lambright. *Sanders*, 153 S.W.3d at 57 (quoting *Spears*, 797 S.W.2d at 656); *see In re VSDH Vaquero Venture, Ltd.*, 2014 WL 4262167, at *2–3 (trial court abused discretion in disqualifying attorney where record did not identify essential fact that attorney's testimony was needed to establish); c*f. Mauze v. Curry*, 861 S.W.2d 869, 870 (Tex. 1993) (trial court abused discretion in failing to grant motion to disqualify where attorney filed affidavit as expert witness which was necessary to establish essential fact).

11

## Conclusion

We hold that the trial court abused its discretion by disqualifying Lambright & Associates from serving as TTSI's attorneys. Accordingly, we direct the trial court to vacate its order disqualifying Lambright & Associates from representing TTSI in the underlying proceeding and to enter an order denying the motion to disqualify. Our writ of mandamus will issue only if the trial court does not comply.


Rebeca Huddle
Justice

Panel consists of Justices Keyes, Huddle, and Lloyd.

12