

# NUMBER 13-24-00187-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

## IN RE ELECTRIC TRANSMISSION TEXAS, LLC

---

## ON PETITION FOR WRIT OF MANDAMUS

---

## MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Longoria and Peña**
**Memorandum Opinion by Justice Peña[1]**

By petition for writ of mandamus, relator Electric Transmission Texas, LLC contends that the trial court[2] abused its discretion by disqualifying its counsel of record,

---

[1] *See* TEX. R. APP. P. 52.8(d) ("When denying relief, the court may hand down an opinion but is not required to do so. When granting relief, the court must hand down an opinion as in any other case."); *id.* R. 47.4 (distinguishing opinions and memorandum opinions).

[2] This original proceeding arises from trial court cause number CCD-0543-F in the County Court at Law No. 6 of Hidalgo County, Texas, and the respondent is the Honorable Albert Garcia. *See id.* R. 52.2.

Matthew L. Jones, Gregory P. Kerr, and Jones, Galligan, Key & Lozano, L.L.P. (the law firm). Given the severity of disqualification of counsel, and applying an exacting standard, as we must, we conditionally grant the petition for writ of mandamus.

## I.  BACKGROUND

On May 21, 2020, relator filed a petition in condemnation against real party in interest MRT Management, LLC (MRT) regarding a 1,770-acre tract of land in Hidalgo County, Texas. Relator sought to condemn this property in order to obtain an easement and right of way to install and operate an electric transmission line. On August 24, 2023, more than three years later, MRT filed a motion to disqualify relator's attorneys Kerr and the law firm, and filed an updated motion to disqualify them later that day. MRT's updated motion to disqualify was premised on the concept that the lawyers at the law firm were witnesses and would potentially be testifying at trial. *See* TEX. DISCIPLINARY R. PROF'L CONDUCT 3.08(a) (generally providing that "[a] lawyer shall not accept or continue employment as an advocate before a tribunal in a contemplated or pending adjudicatory proceeding if the lawyer knows or believes that the lawyer is or may be a witness necessary to establish an essential fact on behalf of the lawyer's client"); *In re Sanders*, 153 S.W.3d 54, 57 (Tex. 2004) (orig. proceeding) (per curiam). According to MRT, the law firm participated in manipulating and controlling the condemnation process for its land to reduce the money that MRT would be paid:

> Unlike most invocations of the power of eminent domain, [relator and a separate party] used their attorneys to handle, control, and effectuate all aspects of the acquisition process. This includes pre-condemnation negotiations, obtaining access to and use of the Property, and interference with and frustration of the continuation of the Development and sale of interests in the Property. [The law firm's] participation was voluntary, and it

2

came with the attendant consequences of their participation in the process of the Condemnation (that participation went so far as to include their being signatories to the contract that underpins both the valuation and other issues in the Condemnation and separate litigation resulting from their conduct). They thus have only themselves to blame for their now being necessary participants in the evidentiary components of the case.

On December 7, 2023, relator filed a response to MRT's updated motion to disqualify addressing the merits of the motion. On March 8, 2024, MRT filed a supplemental motion to disqualify Jones, Kerr, and JGKL. On March 14, 2024, relator filed a supplement to its response to MRT's motion to disqualify, specifically arguing that MRT had waived its motion for disqualification through delay. On April 4, 2024, the trial court held a non-evidentiary hearing on MRT's motion to disqualify. On April 5, 2024, relator filed a letter brief in support of its position. On April 8, 2024, the trial court signed an order granting MRT's motion for disqualification. On April 9, 2024, relator filed an emergency motion for rehearing. The trial court set relator's emergency motion for rehearing to be considered on April 22, 2024, at which time trial on the merits was also scheduled to commence.

On April 15, 2024, relator filed this petition for writ of mandamus. Relator contends by three issues that the trial court abused its discretion by: (1) failing to find that MRT waived its motion to disqualify; (2) granting the motion to disqualify when MRT offered no evidence to support its allegations that the lawyers would be necessary witnesses in the case; and (3) disqualifying the entire law firm. Relator also filed a motion for emergency relief to stay the trial court proceedings, including the April 22, 2024 scheduled trial of the case. This Court granted relator's motion for emergency relief, ordered the trial court proceedings to be stayed, and requested MRT, or any others whose interest might be

3

affected by the relief sought, to file a response to the petition for writ of mandamus. MRT filed a response, and relator filed a reply thereto.

## II.  MANDAMUS

Mandamus is an extraordinary and discretionary remedy. *See In re Allstate Indem. Co.*, 622 S.W.3d 870, 883 (Tex. 2021) (orig. proceeding); *In re Garza*, 544 S.W.3d 836, 840 (Tex. 2018) (orig. proceeding) (per curiam); *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 138 (Tex. 2004) (orig. proceeding). The relator must show that: (1) the trial court abused its discretion, and (2) the relator lacks an adequate remedy on appeal. *In re USAA Gen. Indem. Co.*, 624 S.W.3d 782, 787 (Tex. 2021) (orig. proceeding); *In re Prudential Ins. Co. of Am.*, 148 S.W.3d at 135–36; *Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex. 1992) (orig. proceeding).

When a trial court abuses its discretion by granting a motion to disqualify counsel, appeal is an inadequate remedy. *In re Murrin Bros. 1885, Ltd.*, 603 S.W.3d 53, 57 (Tex. 2019) (orig. proceeding); *In re Turner*, 542 S.W.3d 553, 555 (Tex. 2017) (orig. proceeding) (per curiam); *In re Guar. Ins. Servs., Inc.*, 343 S.W.3d 130, 132 (Tex. 2011) (orig. proceeding) (per curiam); *In re Cerberus Cap. Mgmt., L.P.*, 164 S.W.3d 379, 383 (Tex. 2005) (orig. proceeding) (per curiam); *In re Sanders*, 153 S.W.3d 54, 56 (Tex. 2004) (orig. proceeding) (per curiam); *NCNB Tex. Nat'l Bank v. Coker*, 765 S.W.2d 398, 400 (Tex. 1989) (orig. proceeding). Consequently, the "pertinent inquiry" is whether the trial court abused its discretion by disqualifying the law firm. *See In re Nitla S.A. de C.V.*, 92 S.W.3d 419, 422 (Tex. 2002) (orig. proceeding) (per curiam).

## III.    DISQUALIFICATION

"Disqualification of counsel is a severe remedy that can result in significant expense to clients, disrupt the orderly progress of litigation, and deprive a party of the counsel of its choice." *In re Murrin Bros. 1885, Ltd.*, 603 S.W.3d at 57; *see In re Cerberus Cap. Mgmt., L.P.*, 164 S.W.3d at 382; *In re Nitla S.A. de C.V.*, 92 S.W.3d at 422; *In re Tex. Windstorm Ins. Ass'n*, 417 S.W.3d 119, 129 (Tex. App.—Houston [1st Dist.] 2013, orig. proceeding). "Disqualification can delay proceedings in the trial court, require the client to engage a successor attorney, and, in appropriate cases, deprive the client of work product done on his behalf by the disqualified attorney." *In re Tex. Windstorm Ins. Ass'n*, 417 S.W.3d at 129. "To prevent the abusive filing of such a motion for tactical reasons, the court must carefully evaluate the motion and record to determine if disqualification is warranted." *Id.*; *see In re Nitla S.A. de C.V.*, 92 S.W.3d at 422. Courts thus must apply an exacting standard in ruling on disqualification motions. *In re Murrin Bros. 1885, Ltd.*, 603 S.W.3d at 57; *Coker*, 765 S.W.2d at 399; *see Spears v. Fourth Ct. of Apps.*, 797 S.W.2d 654, 656 (Tex. 1990) (orig. proceeding).

The Texas Disciplinary Rules of Professional Conduct do not set the standard for disqualification; however, they "provide helpful guidance" and "suggest the relevant considerations." *In re Murrin Bros. 1885, Ltd.*, 603 S.W.3d at 57 (quoting *Nat'l Med. Enters., Inc. v. Godbey*, 924 S.W.2d 123, 132 (Tex. 1996) (orig. proceeding)); *see In re Cerberus Cap. Mgmt., L.P.*, 164 S.W.3d at 382; *In re Tex. Windstorm Ins. Ass'n*, 417 S.W.3d at 129. We consider all of the facts and the circumstances of the case in determining whether disqualification is warranted. *In re Murrin Bros. 1885, Ltd.*, 603

5

S.W.3d at 57. The movant bears the burden of proof on a disqualification motion. *In re EPIC Holdings, Inc.*, 985 S.W.2d 41, 60 (Tex. 1998) (orig. proceeding). The movant must also show that it will suffer actual prejudice if counsel is not disqualified. *In re Murrin Bros. 1885, Ltd.*, 603 S.W.3d at 57; *In re Nitla S.A. de C.V.*, 92 S.W.3d at 422. In our review, we also consider the extent to which the non-movant will suffer prejudice if counsel is disqualified. *See id.*

## IV.    WAIVER

In its first issue, relator contends that the trial court abused its discretion by determining that MRT did not waive its motion to disqualify. According to relator, the record indicates that MRT used its motion to disqualify as a dilatory tactic and that MRT waived disqualification insofar as its motion to disqualify is based, in part, on a meeting that occurred on January 6, 2020. In contrast, MRT asserts that it "did not lack diligence in its efforts to disqualify the attorneys"; that "it worked (and is still working) exhaustively over a period of months and years to discover information, obtain relief, and enforce rulings related to their conduct"; and that the "attorneys should not be allowed to manufacture the circumstances and delays with which they now attempt to construct a waiver argument."

A party who fails to file a motion to disqualify counsel in a timely manner waives its complaint. *In re RSR Corp.*, 568 S.W.3d 663, 666 (Tex. 2019) (orig. proceeding) (per curiam); *In re George*, 28 S.W.3d 511, 513 (Tex. 2000) (orig. proceeding); *In re EPIC Holdings, Inc.*, 985 S.W.2d at 52; *Vaughan v. Walther*, 875 S.W.2d 690, 690 (Tex. 1994) (orig. proceeding) (per curiam). "Waiver is the intentional relinquishment of a right actually

6

known, or intentional conduct inconsistent with claiming that right." *In re RSR Corp.*, 568 S.W.3d at 666 (quoting *Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773, 778 (Tex. 2008)). The concept of waiver in this context thus requires us to consider both timeliness and the movant's conduct. *See id.* ("This case lies at the intersection of dilatoriness and waiver."); *see also In re State*, No. 07-21-00315-CV, 2022 WL 1462275, at *4 (Tex. App.—Amarillo May 9, 2022, orig. proceeding) (mem. op.).

In determining whether disqualification has been waived, we consider the length of time between when the conflict became apparent to the movant and when the movant filed its motion for disqualification. *Spears*, 797 S.W.2d at 656; *In re Kyle Fin. Grp., LLC*, 562 S.W.3d 795, 798 (Tex. App.—Houston [14th Dist.] 2018, orig. proceeding); *BP Am. Prod. Co. v. Zaffirini*, 419 S.W.3d 485, 514 (Tex. App.—San Antonio 2013, pet. denied); *In re La. Tex. Healthcare Mgmt., L.L.C.*, 349 S.W.3d 688, 689 (Tex. App.—Houston [14th Dist.] 2011, orig. proceeding). And "[i]n cases of waiver by litigation conduct, the precise question is not so much when waiver occurs as when a party can no longer take it back." *In re Nationwide Ins. Co. of Am.*, 494 S.W.3d 708, 714 (Tex. 2016) (orig. proceeding) (quoting *Perry Homes v. Cull*, 258 S.W.3d 580, 595 (Tex. 2008)). We also examine any evidence that indicates the movant is filing the motion for disqualification as a dilatory trial tactic rather than to address any concern regarding the divulgence of attorney-client confidences. *Spears*, 797 S.W.2d at 658; *In re Kyle Fin. Grp., LLC*, 562 S.W.3d at 798; *In re La. Tex. Healthcare Mgmt., L.L.C.*, 349 S.W.3d at 690. We consider whether the movant has a satisfactory explanation for the delay and whether the delay has prejudiced the opposing party. *In re EPIC Holdings, Inc.*, 985 S.W.2d at 52–53.

We first examine the length of time between when the alleged grounds for disqualification became apparent to MRT and when it filed its motion for disqualification. *See Spears*, 797 S.W.2d at 656; *In re Kyle Fin. Grp., LLC*, 562 S.W.3d at 798. In its updated motion for disqualification, MRT explained that it had been in the process of creating a major warehouse project on its property, yet relator, "primarily through" Jones, Kerr, and the law firm, "worked to slow and eventually halt" the warehouse project in order to expedite relator's acquisition of MRT's property at a reduced price. MRT alleged that Jones, Kerr, and the law firm "had numerous discussions with and made a variety of representations" to MRT, which "culminated in a meeting that took place on January 6, 2020" at the law firm's offices attended by Terry McGovern Jr., MRT's owner. Specifically, MRT alleged that the law firm promised MRT a "big offer" if it stopped developing the warehouse project, and that Jones and Kerr put this promise in writing and signed it. MRT further alleged that the law firm threatened retribution if MRT failed to stop development. In accordance with the agreements reached at that meeting, MRT stopped development and signed a possession and use agreement allowing relator to begin using the property; however, MRT never received the "agreed-upon payments," and instead, the law firm used the cessation of work as (1) the basis for refusing to compensate MRT, and (2) a tool to reduce the valuation of the property so that relator would be able to acquire the property more cheaply. When MRT failed to receive the payments, it attempted to recommence development of the warehouse project, but relator, through the law firm, "had taken control of, prejudiced, and prevented completion of the development process," and Jones and Kerr "pressured and utilized other firm clients and persons and entities

8

they represent or control to stop, when possible, and delay, when not, the completion" of the warehouse project. MRT specifically alleged that "[a]s a result of the acts of [the law firm], Jones, and Kerr, the [warehouse project] has yet to be completed and MRT has lost all the sales it had garnered for portions of the [p]roperty," and as "a direct and proximate result of their conduct and MRT's reliance thereon, MRT has been unable to complete the [warehouse project], has lost millions of dollars in sales it otherwise would have consummated," and has incurred substantial costs attempting to address the foregoing events. MRT argued that Jones, Kerr, and "possibly" other members of the law firm would testify as a "certitude" regarding "the facts and essential issues underlying the [c]ondemnation" because they "handle[d], control[led], and effectuate[d] all aspects of the acquisition process," including "pre-condemnation negotiations, obtaining access to and use of the Property, and interference with and frustration of the continuation of the Development and sale of interests in the Property."[3]

Based on the foregoing, MRT was aware of the alleged grounds for disqualification as early as January 6, 2020, even before the law firm filed relator's lawsuit to condemn MRT's property on May 21, 2020. MRT did not file its updated motion for disqualification

---

[3] The lawyer-witness rule of professional conduct prohibits a lawyer from serving as an advocate if the lawyer may be a witness that is "*necessary* to establish an *essential* fact." TEX. DISCIPLINARY R. PROF'L CONDUCT 3.08(a) (emphasis added); *see In re Sanders*, 153 S.W.3d 54, 57 (Tex. 2004) (orig. proceeding) (per curiam). A movant for disqualification has the "significant burden" to explain why the lawyer's testimony is necessary to establish an essential fact and to demonstrate that the movant has a genuine need for the lawyer's testimony. *In re Tex. Tech. Servs., Inc.*, 476 S.W.3d 747, 751, 752 (Tex. App.—Houston [1st Dist.] 2015, orig. proceeding); *see In re Garza*, 373 S.W.3d 115, 118 (Tex. App.—San Antonio 2012, orig. proceeding). Further, the party moving for disqualification must establish that the attorney engaging in the dual roles of attorney and witness will cause the moving party actual prejudice. *In re Sanders*, 153 S.W.3d at 57; *In re Tex. Tech. Servs., Inc.*, 476 S.W.3d at 751. MRT's updated motion for disqualification does not address why testimony from the law firm witnesses would be necessary to establish any essential facts and does not explain how it would suffer actual prejudice if the law firm was not disqualified.

until August 24, 2023, three years and three months later. MRT then waited until March 8, 2024, more than six months later, to file a supplemental motion to disqualify. A three-year delay far exceeds periods that have been held to support waiver. *See e.g.*, *Buck v. Palmer*, 381 S.W.3d 525, 528 (Tex. 2012) (concluding that an unexplained delay of seven months amounted to waiver); *Vaughan*, 875 S.W.2d at 691 (finding that a delay of six and one-half months constituted waiver).

We next examine the record for any evidence that indicates that MRT filed its motion for disqualification as a dilatory trial tactic rather than to address any concern regarding the divulgence of attorney-client confidences. *See Spears*, 797 S.W.2d at 658; *In re Kyle Fin. Grp., LLC*, 562 S.W.3d at 798; *In re La. Tex. Healthcare Mgmt., L.L.C.*, 349 S.W.3d at 690. This case has been set for trial on at least four separate occasions, and MRT filed its motion to disqualify on August 24, 2023, after the first trial setting and immediately before the second trial setting. Its motion for disqualification was filed within days of filing a motion to continue the second trial date. MRT then filed its supplemental motion to disqualify on March 8, 2024, a little more than a month before the fourth trial date of April 22, 2024. MRT did not secure a hearing on its motion to disqualify until April 4, 2024, more than seven months after its motion was initially filed, even though the record indicates that MRT secured hearings on other pending motions in that interval of time. Under the foregoing authority, we conclude that this sequence of events presents some indication that the disqualification motion was utilized as a dilatory tactic. *See, e.g.*, *Vaughan*, 875 S.W.2d at 690–91 (holding that the movant waived her right to disqualify counsel where she waited to file the motion to disqualify until the day of the final hearing

10

in a child custody case when she had been aware of the possible conflict of interest nearly seven months earlier).

Finally, we consider whether MRT has a satisfactory explanation for the delay and whether the delay has prejudiced relator. *See In re EPIC Holdings, Inc.*, 985 S.W.2d at 52–53. MRT denies that it lacked diligence in filing its motion to disqualify and explains that it has worked exhaustively to discover information regarding the conflict and obtain relief. While the record indicates that MRT's counsel has made extensive efforts to investigate the role of relator's counsel with regard to the lawsuit at issue, MRT offers no details regarding why such a lengthy period was required or necessary, and otherwise offers no explanation for the delay. In terms of prejudice to relator, the trial court disqualified its counsel on April 8, 2024, two weeks before the fourth scheduled trial date, and almost four years after the inception of suit. Relator has been represented by the law firm during the entire pendency of its lawsuit and being required to obtain new counsel on the eve of a fourth scheduled trial, after abundant discovery has taken place, is inherently prejudicial.

Based on controlling supreme court precedent, and given the exacting standard required for disqualification, we are constrained to conclude that MRT waived its right to disqualify the law firm. *See In re RSR Corp.*, 568 S.W.3d at 666; *In re George*, 28 S.W.3d at 513; *In re EPIC Holdings, Inc.*, 985 S.W.2d at 52; *Vaughan*, 875 S.W.2d at 690. We sustain relator's first issue, and having done so, need not address its remaining two issues. See TEX. R. APP. P. 47.1; 52.8(d).

11

## V. CONCLUSION

The Court, having examined and fully considered the petition for writ of mandamus, the response, the reply, and the applicable law, is of the opinion that relator has met its burden to obtain relief. Accordingly, we lift the stay previously imposed in this case. *See id.* R. 52.10(b) ("Unless vacated or modified, an order granting temporary relief is effective until the case is finally decided."). We conditionally grant the petition for writ of mandamus, and we direct the trial court to vacate its order granting the motion for disqualification and to enter an appropriate order denying such motion. Our writ will issue only if the trial court fails to promptly comply.

L. ARON PEÑA JR.
Justice

Delivered and filed on the
28th day of June, 2024.

12