

# NUMBER 13-25-00235-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

## IN RE ANNABELLE PALOMO

## ON PETITION FOR WRIT OF MANDAMUS

## OPINION

**Before Justices Silva, Peña, and Fonseca**
**Opinion by Justice Silva[1]**

By petition for writ of mandamus, relator Annabelle Palomo asserts that the trial court[2] abused its discretion by denying her motion to disqualify counsel of record for the real party in interest, Roel Landa. We conditionally grant the petition for writ of mandamus

---

[1] *See* TEX. R. APP. P. 52.8(d) ("When denying relief, the court may hand down an opinion but is not required to do so. When granting relief, the court must hand down an opinion as in any other case."); *id.* R. 47.4 (distinguishing opinions and memorandum opinions).

[2] This original proceeding arises from trial court cause number C-2210-21-C in the 139th District Court of Hidalgo County, Texas, and the respondent is the Honorable J.R. "Bobby" Flores. *See id.* R. 52.2.

in part and deny in part.

## I.     BACKGROUND

The underlying litigation arises from a dispute between Palomo and Landa, members of Lan-Rod Investments, LLC (Lan-Rod), regarding the ownership, control, and management of Lan-Rod. Landa filed suit against Palomo for declaratory relief and causes of action including, *inter alia*, fraud, and breach of fiduciary duty. Landa alleged in relevant part that Palomo engaged in self-dealing and used the assets of Lan-Rod for her own personal gain and that of her family. Landa explained that Palomo had sued her brother, Michael Palomo, over ownership of Lan-Rod in a separate lawsuit.[3] According to Palomo, Michael falsely represented that he had an ownership interest in Lan-Rod, and she claimed that he did not.

Palomo's petition against Michael stated, in part, that she had advanced monies to Michael as loans, "some of which have been paid out of funds belonging to [Lan-Rod] and charged against [her] account," and others which were made by personal checks that she wrote to him. Palomo stated that she "believe[d] that [Michael] may assert that funds advanced to him by her constitute payments to him related to his unsupported and untrue claim that he owns an interest in [Lan-Rod]." Thereafter, Michael filed a counterclaim against Palomo alleging that he owned forty percent of Lan-Rod and asserting various causes of action against her including breach of contract, fraud, fraudulent inducement, and negligent misrepresentation. Palomo and Michael ultimately mediated their dispute and settled their claims against each other. Landa alleged that because of the settlement,

---

[3] This separate lawsuit, *Annabelle Palomo Rodriguez v. Michael Palomo*, was filed in cause number C-4651-16-D in the 206th District Court of Hidalgo County, Texas.

Palomo caused Lan-Rod to forgive a loan owed to the company by an entity owned by Michael, and that Palomo made settlement payments from Lan-Rod to Michael while "deliberately mischaracterizing these improper settlement payments as 'consulting fees.'" Landa thus referenced this separate lawsuit in relation to his allegations that Palomo had misused corporate assets belonging to Lan-Rod.

In the underlying litigation giving rise to this original proceeding—that is—Landa's lawsuit against Palomo—Landa was initially represented by Dan Worthington, Elizabeth Sandoval Cantu, and Sofia A. Ramón from the law firm of Ramón Worthington Nicolas & Cantu, PLLC. On or about December 3, 2024, Chris Franz and Gil Peralez and their firm, Peralez Franz, LLP, filed an appearance of counsel in the case as co-counsel for Landa. On December 20, 2024, Palomo filed a motion to disqualify all members of both law firms on grounds that Peralez "served as a mediator in prior litigation related to the present case." Specifically, Peralez mediated the litigation between Palomo and Michael over ownership of Lan-Rod and achieved a settlement of the claims in that litigation. Palomo thus alleged that both firms were required to be disqualified based on: (1) Texas Civil Practices and Remedies Code § 154.053; (2) Texas Disciplinary Rule of Professional Conduct 1.12[4]; and (3) Texas Supreme Court Ethical Guidelines for Mediators Nos. 2 & 8. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 154.053 (governing the standards and duties of impartial third parties); TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 1.12, *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. A (governing the conflicts of adjudicatory

_____

[4] The Texas Supreme Court renumbered many of the provisions of the Texas Disciplinary Rules of Professional Conduct in 2024. We refer to the affected rules as they are currently numbered throughout this opinion.

officials and law clerks); *Ethical Guidelines for Mediators*, available at https://www.txcourts.gov/media/514701/Eth-Guideline-Amended-Order.pdf (last visited August 29, 2025). On January 8, 2025, Peralez filed a motion to withdraw as counsel for Landa.

On February 11, 2025, Landa filed a response to Palomo's motion to disqualify alleging that neither Ramon Worthington Nicolas & Cantu, PLLC nor Peralez Franz, LLP should be disqualified. Landa's response acknowledged that Peralez mediated the lawsuit between Palomo and Michael and stated that counsel "did not discover the mediated case" until reading Palomo's motion to disqualify. According to Landa's response, the Peralez Franz, LLP firm had retained records regarding the mediation under Palomo's previous last name, Rodriguez, and thus failed to discover the related case when performing a "conflicts" check. Landa conceded, in relevant part, that his attorneys "ha[d] accepted representation on [his] behalf [as a] party adverse to a party to the mediation [(Palomo)] in a matter arguably related to the mediation." However, Landa argued that disqualification was not warranted because Peralez "has been screened from participation, he will not take part in any fee, and [Palomo] has been advised of same in writing." In this regard, Landa asserted that Franz sent a letter to Paloma's counsel on January 8, 2025, stating that:

> This letter is sent to you as the attorneys for [Palomo] pursuant to Texas Disciplinary Rule of Professional Conduct 1.11(c). Please be advised that [Peralez] has been and will continue to be screened from participation in this matter and he will be apportioned no part of any fee derived from this matter.

4

Landa further supported his response with, *inter alia*, affidavits from Franz and Worthington.

On February 12, 2025, the trial court held a hearing on Palomo's motion for disqualification and took the matter under advisement. On February 27, 2025, the trial court ultimately denied Palomo's motion for disqualification.

This original proceeding ensued. By two issues, Paloma asserts that the trial court abused its discretion when it denied her motion to disqualify: (1) Franz because Franz's partner, Peralez, who served as a mediator in a prior and substantially related matter, was not properly screened from participation in this matter; and (2) Worthington because there is an irrebuttable presumption that Peralez shared Palomo's confidential information with him. Palomo also sought temporary relief to stay the trial court proceedings pending the resolution of her petition for writ of mandamus. *See* TEX. R. APP. P. 52.10. The Court granted Palomo's motion, stayed the trial court proceedings, and requested and received a response to the petition for writ of mandamus from Landa. *See id.* R. 52.4, 52.6. Palomo has filed a reply thereto. *See id.* R. 52.5.

## II.    MANDAMUS

Mandamus relief provides an "extraordinary remedy." *In re Rogers*, 690 S.W.3d 296, 302 (Tex. 2024) (orig. proceeding) (per curiam) (quoting *In re USAA Gen. Indem. Co.*, 624 S.W.3d 782, 787 (Tex. 2021) (orig. proceeding)). Mandamus is discretionary in nature and it is governed by equitable principles. *In re First Reserve Mgmt., L.P.*, 671 S.W.3d 653, 663 (Tex. 2023) (orig. proceeding); *In re Garza*, 544 S.W.3d 836, 840 (Tex. 2018) (orig. proceeding) (per curiam). To obtain mandamus relief, the relator must show

5

that the trial court clearly abused its discretion and the relator lacks an adequate remedy by appeal. *In re Dall. HERO*, 698 S.W.3d 242, 247 (Tex. 2024) (orig. proceeding); *In re AutoZoners, LLC*, 694 S.W.3d 219, 223 (Tex. 2024) (orig. proceeding) (per curiam).

When a trial court abuses its discretion by denying a motion to disqualify counsel, appeal is an inadequate remedy. *In re Murrin Bros. 1885, Ltd.*, 603 S.W.3d 53, 57 (Tex. 2019) (orig. proceeding); *In re Turner*, 542 S.W.3d 553, 555 (Tex. 2017) (orig. proceeding) (per curiam); *In re Guar. Ins. Servs., Inc.*, 343 S.W.3d 130, 132 (Tex. 2011) (orig. proceeding) (per curiam); *In re Cerberus Cap. Mgmt., L.P.*, 164 S.W.3d 379, 383 (Tex. 2005) (orig. proceeding) (per curiam); *In re Sanders*, 153 S.W.3d 54, 56 (Tex. 2004) (orig. proceeding) (per curiam); *NCNB Tex. Nat'l Bank v. Coker*, 765 S.W.2d 398, 400 (Tex. 1989) (orig. proceeding). Accordingly, the "pertinent inquiry" in this original proceeding is whether the trial court abused its discretion by denying the motion for disqualification. *See In re Nitla S.A. de C.V.*, 92 S.W.3d 419, 422 (Tex. 2002) (orig. proceeding) (per curiam).

### III.   DISQUALIFICATION

"Disqualification of counsel is a severe remedy that can result in significant expense to clients, disrupt the orderly progress of litigation, and deprive a party of the counsel of its choice." *In re Murrin Bros. 1885, Ltd.*, 603 S.W.3d at 57; *see In re Cerberus Cap. Mgmt., L.P.*, 164 S.W.3d at 382; *In re Nitla S.A. de C.V.*, 92 S.W.3d at 422; *In re Tex. Windstorm Ins. Ass'n*, 417 S.W.3d 119, 129 (Tex. App.—Houston [1st Dist.] 2013, orig. proceeding). "Disqualification can delay proceedings in the trial court, require the client to engage a successor attorney, and, in appropriate cases, deprive the client of

6

work product done on his behalf by the disqualified attorney." *In re Tex. Windstorm Ins. Ass'n*, 417 S.W.3d at 129. "To prevent the abusive filing of such a motion for tactical reasons, the court must carefully evaluate the motion and record to determine if disqualification is warranted." *Id.*; *see In re Nitla S.A. de C.V.*, 92 S.W.3d at 422. Courts thus must apply an exacting standard in ruling on disqualification motions. *In re Murrin Bros. 1885, Ltd.*, 603 S.W.3d at 57; *Coker*, 765 S.W.2d at 399; *see Spears v. Fourth Ct. of Apps.*, 797 S.W.2d 654, 656 (Tex. 1990) (orig. proceeding).

The Texas Disciplinary Rules of Professional Conduct (Rules) do not set the standard for disqualification; however, they "provide helpful guidance" and "suggest the relevant considerations." *In re Murrin Bros. 1885, Ltd.*, 603 S.W.3d at 57 (quoting *Nat'l Med. Enters., Inc. v. Godbey*, 924 S.W.2d 123, 132 (Tex. 1996) (orig. proceeding)); *see In re Cerberus Cap. Mgmt., L.P.*, 164 S.W.3d at 382; *In re Tex. Windstorm Ins. Ass'n*, 417 S.W.3d at 129. We consider all the facts and circumstances of the case in determining whether disqualification is warranted. *In re Murrin Bros. 1885, Ltd.*, 603 S.W.3d at 57. The movant bears the burden of proof on a disqualification motion. *In re TMD Def. & Space, LLC*, 649 S.W.3d 764, 769–70 (Tex. App.—El Paso 2022, orig. proceeding); *In re Tex. Windstorm Ins. Ass'n*, 417 S.W.3d at 129. The movant must also show that it will suffer actual prejudice if counsel is not disqualified. *In re Murrin Bros. 1885, Ltd.*, 603 S.W.3d at 57; *In re Nitla S.A. de C.V.*, 92 S.W.3d at 422. In our review, we also consider the extent to which the nonmovant will suffer prejudice if counsel is disqualified. *See In re Murrin Bros. 1885, Ltd.*, 603 S.W.3d at 57.

## IV.   ANALYSIS

As stated previously, Palomo asserts that the trial court abused its discretion by refusing to disqualify Franz and Worthington. Landa asserts, in contrast, that Palomo has not met her burden to show either that disqualification was required or that she would suffer actual prejudice. Landa further asserts that: (1) Texas Disciplinary Rule of Professional Conduct 1.12 does not apply here; (2) Palomo fails to interpret Rule 1.12 correctly; (3) if Rule 1.12 applies, his counsel met its requirements; and (4) there is no irrebuttable presumption that Peralez shared any confidential information with any other lawyer. *See* TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 1.12.

### A.   Rule 1.12

Rule 1.12 provides guidance regarding conflicts of interest in the client-lawyer relationship involving an "Adjudicatory Official or Law Clerk." *Id.* R. 1.12. This rule provides in relevant part that:

(a)   A lawyer shall not represent anyone in connection with a matter in which the lawyer has passed upon the merits or otherwise participated personally and substantially as an adjudicatory official or law clerk to an adjudicatory official, unless all parties to the proceeding consent after disclosure.

. . . .

(c)   If paragraph (a) is applicable to a lawyer, no other lawyer in a firm with which that lawyer is associated may knowingly undertake or continue representation in the matter unless:

(1)   the lawyer who is subject to paragraph (a) is screened from participation in the matter and is apportioned no part of the fee therefrom; and

(2)   written notice is promptly given to the other parties to the proceeding.

*Id.* Under the Rules, an "Adjudicatory Official" includes a mediator or an arbitrator. *Id.* terminology ¶¶ 1, 21. Here, it is undisputed that Peralez participated personally and substantially as a mediator in the lawsuit involving Palomo and Michael.

**B.     Interpretation**

Landa asserts that Rule 1.12 does not require disqualification of Franz because Peralez did not serve as a mediator in *this* lawsuit and instead mediated the *separate* dispute between Palomo and Michael. Landa argues, in short, that "matter" as used in Rule 1.12 means *the same* lawsuit, not a different lawsuit. In support of his contention, Landa argues that the Rules distinguish between "matters" and "substantially related" matters, thus the term "matter" in Rule 1.12 does not include other lawsuits.

We interpret the Rules in accordance with the tenets of statutory construction. *In re Caballero*, 272 S.W.3d 595, 599 (Tex. 2008); *Powell v. Comm'n for Law. Discipline*, 710 S.W.3d 288, 314 (Tex. App.—Houston [1st Dist.] 2024, no pet.); *Rodgers v. Comm'n for Lawyer Discipline*, 151 S.W.3d 602, 614 (Tex. App.—Fort Worth 2004, pet. denied). We review questions regarding statutory construction de novo as a question of law. *Sirius XM Radio, Inc. v. Hegar*, 643 S.W.3d 402, 406 (Tex. 2022). Our primary goal is to determine and give effect to the drafters' intent; and in doing so we generally rely on the plain meaning of the words used. *El Paso Educ. Initiative, Inc. v. Amex Props., LLC*, 602 S.W.3d 521, 531 (Tex. 2020); *Rodgers*, 151 S.W.3d at 614; *see also* TEX. GOV'T CODE ANN. § 311.011(a). We give meaning to every word, harmonizing each provision, while considering the context and framework of the Rules as a whole. *See Pub. Util. Comm'n of Tex. v. Luminant Energy Co. LLC*, 691 S.W.3d 448, 460–61 (Tex. 2024). We presume

9

that the drafters chose language "deliberately and purposefully," and that they "likewise excluded language deliberately and purposefully." *Hogan v. Zoanni*, 627 S.W.3d 163, 169 (Tex. 2021) (cleaned up); *see El Paso Educ. Initiative, Inc.*, 602 S.W.3d at 531–32.

Based on the rules of statutory construction, we disagree with Landa's interpretation of Rule 1.12. While Landa focuses on the fact that Rule 1.12 refers to "a matter" and does not include the phrase "substantially related," this argument fails to comport with the directive for us to consider the Rules as a whole. *See Pub. Util. Comm'n of Tex.*, 691 S.W.3d at 460–61. In this regard, the Rules use several different terms to define the parameters of disqualification based on alleged conflicts of interest. *See, e.g.*, TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 1.06(a) ("the same litigation"); *id.* R. 1.06(b) ("a substantially related matter"); *Id.* R. 1.07(a)(2) ("the matter"); *id.* R. 1.08(c) ("the matter"); *id.* R. 1.09(a), (b) ("a matter" and "the same or a substantially related matter"); *id.* R. 1.10(b)(1) ("the same or substantially related"); *id.* R. 1.11(a) ("in connection with a matter"). The comments for Rule 1.09 provide, *inter alia*, that

> The scope of a "matter" for purposes of this Rule depends on the facts of a particular situation or transaction. When a lawyer has been directly involved in a specific transaction, subsequent representation of other clients with materially adverse interests in that transaction clearly is prohibited. On the other hand, a lawyer who recurrently handled a type of problem for a former client is not precluded from later representing another client in a factually distinct problem of that type even though the subsequent representation involves a position adverse to the former client. The underlying question is whether the lawyer was so involved in the matter that the subsequent representation can be justly regarded as a changing of sides in the matter in question.

*Id.* R. 1.09 cmt. 2; *see id.* cmt. 3 (regarding when matters are "substantially related").

10

Examining the Rules as a whole, we note that had the drafters intended for "matter" to mean only the same lawsuit, they could have used the phrase "the same litigation" as used in Rule 1.06(a). *See id.* R. 1.06(a). Landa's contention further violates the rule of statutory construction requiring us to give meaning to every word in the provision at issue. *See Pub. Util. Comm'n of Tex.*, 691 S.W.3d at 460–61. Specifically, Rule 1.12 prohibits a lawyer from representing someone "in connection with a matter," yet Landa would have us read this phrase prohibiting a lawyer from representing anyone "in a matter," thereby rendering the phrase "in connection with" mere surplusage. *See Hogan*, 627 S.W.3d at 169.

Based on the foregoing, we conclude that the term "matter" as used in Rule 1.12 is not limited to the same specific case over which the adjudicative official, here a mediator, previously presided. *See* TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 1.12. While the terms of the rule require some "connection" between the matter at hand and the previous adjudicatory proceeding, the rule does not require them to be the same. *See id.*

Our determination is consistent with the decision made by the Fourth Court of Appeals in a similar case regarding the construction of Rule 1.12. *See In re de Brittingham*, 319 S.W.3d 95, 98–99 (Tex. App.—San Antonio 2010, orig. proceeding). In *de Brittingham*, the appellate court considered what constitutes a "matter" for the purposes of paragraph (a) of the rule. *See id.* at 98. At issue was whether the matter in which a former judge—and now member of a law firm—had participated was the same matter as that currently at issue. *See id.* The two matters were separate appeals arising

11

from the same probate proceeding. *See id.* The appellate court concluded that the term "matter" in that instance referred to the ancillary probate proceeding out of which the ancillary appeals arose and was not limited to each discrete appeal or original proceeding. *Id.* at 99.[5] The appellate court thus concluded that disqualification was warranted. *See id.*

Landa asserts, in the alternative, that Palomo failed to show that the litigation between Palomo and Michael is substantially related to the instant case. However, Rule 1.12 does not use this terminology and does not require such a showing. *See* TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 1.12. Rather, the language of Rule 1.12, in relevant part, prohibits Peralez "from representing anyone *in connection with* a matter in which [he has] participated personally and substantially as an adjudicatory official." *Id.* (emphasis added). We note that the phrase "in connection with" implies a broad nexus. According to the Texas Supreme Court:

> Generally, the use of the phrase "in connection with" does not imply a material or significant connection although context may indicate otherwise. One authority has referred to the phrase as "a vague, loose connective." BRYAN GARNER, A DICTIONARY OF MODERN LEGAL USAGE 287 (1st ed. 1987). Another has described the phrase as one of "intentional breadth." *Titan Transp., LP v. Combs*, 433 S.W.3d 625, 637 (Tex. App.—Austin 2014, pet. denied). We have expressed a similar view. *See Lippincott v. Whisenhunt*, 462 S.W.3d 507, 509 (Tex. 2015) (per curiam) (construing "in connection with" and "relates to" as effective synonyms in the context of the Texas Citizens Participation Act). We have also said in one case that it was error to construe the phrase as requiring more than a tangential, tenuous, or

---

[5] In reaching its decision, the court noted that a comment to Rule 1.12 states that it "generally parallels" Rule 1.11. *See In re de Brittingham*, 319 S.W.3d at 98–99 (citing TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 1.12 cmt. 1). The court found it significant that Rule 1.11 provides, in relevant part that: "As used in this rule, the term 'matter' . . . includes . . . [a]ny adjudicatory proceeding, application, request for a ruling or other determination, contract, claim, controversy, investigation, charge accusation, arrest or other similar, particular transaction involving a specific party or parties." TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 1.11; *see In re de Brittingham*, 319 S.W.3d at 98–99.

remote relationship between the connected items. [*ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 900–01 (Tex. 2017) (per curiam)].

*Tarrant County v. Bonner*, 574 S.W.3d 893, 898 (Tex. 2019).

We conclude that this standard has been met in this case. Peralez participated personally and substantially as a mediator in a lawsuit between Palomo and Michael over whether Michael possessed any ownership interest in Lan-Rod and the characterization of funds that Palomo caused Lan-Rod to pay to Michael as either loans or distributions from the company. In the instant case, Landa's allegations against Palomo, in relevant part, also concern her handling of Lan-Rod's funds and these same payments to Michael. In this case, Peralez appeared on behalf of Landa in connection with this same matter.

Landa asserts that Palomo is required to show that she has been prejudiced as required to disqualify opposing counsel, and she has not met that burden in this case. In this regard, the Texas Supreme Court has held that even when a violation of the disciplinary rules has been established, the party requesting disqualification has the burden to show that it will suffer prejudice if disqualification is not granted. *In re Murrin Bros. 1885, Ltd.*, 603 S.W.3d at 57.

In *de Brittingham*, the appellate court examined the cases that require a showing of prejudice in the context of disqualification, and concluded that such cases were distinguishable:

> Rule [1.12] provides this court with guidance, and . . . neither the rule nor the comment provides that the party seeking disqualification must show prejudice. To require the party seeking disqualification under [Rule 1.12] to show prejudice would likely place an unattainable burden on that party because the party seeking disqualification does not know what insight an adjudicatory official has gained about the underlying case. . . . Requiring [the movant] to show that the confidential discussions . . . prejudiced him

13

> would be an impossible burden, and one we do not believe the rule does or should impose.

*Id*. In other contexts, specifically those involving former clients, many courts of appeals have held that the requirement to show prejudice is either not applicable or satisfied because of the presumption that confidential information was exchanged and the concept that former clients are generally not required to disclose confidential communications with their former counsel to make the showing of actual prejudice. *See*, *e.g.*, *In re Fenenbock*, 621 S.W.3d 724, 738 (Tex. App.—El Paso 2020, orig. proceeding [mand. denied]) (concluding that the movant "established she would be presumptively prejudiced" in a case under Rule 1.09(a)(3)); *Hendricks v. Barker*, 523 S.W.3d 152, 160 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (concluding that the movant was not required to prove that she was actually prejudiced under Rule 1.09); *In re Tex. Windstorm Ins. Ass'n*, 417 S.W.3d at 133 (stating that "former clients generally are not required to disclose confidential communications with their former counsel in order to make the showing of actual prejudice that is usually necessary to support the severe remedy of attorney disqualification"); *see also In re Brookshire*, No. 12-23-00236-CV, 2023 WL 7399563, at *3–7 (Tex. App.—Tyler Nov. 8, 2023, orig. proceeding [mand. denied]) (mem. op.) (collecting cases and concluding that the trial court did not abuse its discretion by disqualifying counsel under Rule 1.09 without evidence of actual prejudice); *In re Liebbe*, No. 12-19-00044-CV, 2019 WL 1416637, at *6 (Tex. App.—Tyler Mar. 29, 2019, orig. proceeding) (mem. op.) ("Because neither the plain language of Rule 1.09, nor its comments, require a showing of actual prejudice, we decline to read an actual prejudice requirement into the plain language of Rule 1.09.").

14

We conclude that Palomo was required to make a showing of actual prejudice to obtain disqualification under Rule 1.12; however, that burden was satisfied because, under the factual scenario shown here, prejudice is presumed. *See In re Fenenbock*, 621 S.W.3d at 738; *see also In re Brookshire*, 2023 WL 7399563, at *3–7.

## C.      Disqualification of Franz

We have concluded that Rule 1.12(a) applies to Peralez under the facts of this case. Because Rule 1.12(a) applies to Peralez, we examine the remainder of Rule 1.12 to determine if Franz, a member of Peralez's firm, is likewise disqualified. *See* TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 1.12. Under Rule 1.12(c), other lawyers in the firm such as Franz may not undertake or continue representation in the matter unless Peralez "is screened from participation in the matter and is apportioned no part of the fee" and "written notice is promptly given to the other parties to the proceeding." *Id.* R. 1.12(C).

Landa's response to Palomo's motion to disqualify included an affidavit from Franz which verified some of the allegations in the response. Specifically, Franz testified that in October 2018, Peralez mediated the lawsuit between Palomo, then known as Annabelle Palomo-Rodriguez, and Michael. In November 2024, Franz conducted a "conflicts" check before accepting representation in this case, but did not discover the mediated case because the case was saved in the firm's alphabetically indexed mediation files under "Rodriguez." Peralez Franz, LLP first became aware that Peralez had mediated a case involving Palomo upon reading Palomo's motion to disqualify filed on December 20, 2024. Upon learning of his participation as mediator of that prior case, Peralez filed a motion to withdraw on January 8, 2025. On the same date, Franz sent a letter to Palomo "complying

15

with Texas Disciplinary Rule of Professional Conduct [1.12(c)]," stating that Peralez "has been and will continue to be screened from participation in this matter and he will be apportioned no part of any fee derived from this matter."

Franz further testified that the statements in the notice letter were within his personal knowledge and were true and correct. He also explained that he was "the only lawyer at Peralez Franz, LLP who has performed any substantive work on this case," and that "Peralez has never performed any substantive work or trial preparation in this case." Franz stated that he "never had any substantive communications" with Peralez about the mediation, and Peralez "never disclosed to me or anyone else in this firm any information of any kind pertaining to the mediation." Franz averred that, "We have had no conversations or communications of any kind concerning that mediation, and [Peralez] has not disclosed any information derived from or relating to it, including but not limited to, any confidential reports, discussions and communications with the parties or their attorneys, or any documents that were transmitted or involved in the mediation." Franz also stated that he had not reviewed any documents or information in the mediation file except for the publicly filed letter advising the trial court that the mediated case had settled.

The Rules state that "'[s]creened' denotes the isolation of a lawyer from any participation in a matter through the timely imposition of procedures within a firm that are reasonably adequate under the circumstances to protect information that the isolated lawyer is obligated to protect under these Rules or other law." *Id.* terminology ¶ 19; *see id.* R. 1.12(c). The Rules further state that screening procedures should be "timely"

16

imposed. *Id.* Here, Peralez Franz, LLP had been involved in the case since November 2024, filed substantive pleadings on Landa's behalf in early December, learned of the disqualification on December 23, 2024, and provided notice that Peralez "has been and will continue to be screened from participation" on January 8, 2025, the same day that the firm filed its response to Palomo's motion for disqualification. The record fails to reflect the specific date when the firm began screening Peralez from the lawsuit.

Examining the specific facts and circumstances of this case and the record provided, we conclude that the firm has not shown that the screening procedures were timely instituted in a manner sufficient to comply with the rule. *See id.*; *see also, e.g., LaSalle Nat. Bank v. Lake County*, 703 F.2d 252, 259 (7th Cir. 1983) (stating that for a screening arrangement to be effective, it must be "set up at the time when the potentially disqualifying event occurred"); *Cobb Publ'g, Inc. v. Hearst Corp.*, 907 F. Supp. 1038, 1046–47 (E.D. Mich. 1995) (concluding that an "18 day or 11 day delay" in instituting screening mechanisms was insufficient). Considering Peralez's status as a mediator, the connection between the mediated case and this one, the fact that the conflicts check failed to show the presence of the mediated case, and the fact that the screening procedures were instituted at an indefinite date after the motion for disqualification was filed, we conclude that screening was not timely imposed as required by Rule 1.12. *See* TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 1.12; *id.* terminology ¶ 19. While we understand and appreciate that Franz has explained nothing improper occurred, we do not believe that can nullify or excuse the requirement for a timely, effective screening mechanism.

We similarly conclude that Landa's Rule 1.12 notice regarding Peralez's service as mediator was not "promptly given." *See id.* R. 1.12(c) (2). The notice was not sent until after the motion for disqualification was filed. *See id.*; *Moore v. Altra Energy Techs., Inc.*, 295 S.W.3d 404, 406–07 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (noting that "it was not until Moore filed a response to the motion to disqualify that Looper Reed represented to Altra for the first time that Rustay was screened from participation in this appeal").

Based on the foregoing, we conclude that the trial court abused its discretion by failing to disqualify Franz. Accordingly, we sustain Palomo's first issue.

## D. Disqualification of Worthington

In her second issue, Palomo asserts that the trial court abused its discretion by failing to disqualify Worthington because there is an irrebuttable presumption that Peralez shared her confidential information with his co-counsel, Worthington. Palomo cites *In re CMH Homes, Inc.* in support of her contention. *See* No. 04-13-00050-CV, 2013 WL 2446724, at *5 (Tex. App.—San Antonio June 5, 2013, orig. proceeding) (mem. op.). In that case, an attorney represented relators in private practice, then became the county attorney for Duval County. *Id.* at *1. The county attorney and outside counsel filed suit against relators in a substantially related matter, and relators moved to disqualify the county attorney and outside counsel. *See id.* The county attorney withdrew as counsel; however, outside counsel asserted that they were not disqualified and provided evidence that: (1) the attorneys discussed the contingency fee contract; (2) they never discussed anything substantive regarding the case; (3) outside counsel did not obtain information

18

from the county attorney; (4) the county attorney did not draft or review the pleadings and had no involvement in filing the case; (5) the county attorney's only involvement was approving the employment agreement with outside counsel; and (6) identifying the county attorney as co-counsel on the case was a "mere formality." *Id.* at *3.

Although both sides depended on *In re American Home Products Corp.*, 985 S.W.2d 68, 71 (Tex. 1998) (orig. proceeding), to support their opposing positions, the Fourth Court of Appeals determined that case was "distinguishable based on the fact the individual switching sides from one party to the other was a paralegal, not an attorney." *In re CMH Homes, Inc.*, 2013 WL 2446724, at *5. The appellate court thus instead focused on the two irrebuttable presumptions that apply when an attorney moves from one firm to another: (1) that the attorney gained confidential information on every case at the attorney's former firm; and (2) the attorney will in turn share those same confidences with other attorneys in the new firm. *Id.* at *5. In determining whether outside counsel was disqualified, the Fourth Court of Appeals analyzed language in former Rule 1.09(b) stating generally that "when lawyers are or have become members of or associated with a firm, none of them shall knowingly represent a client if any one of them practicing alone would be prohibited from doing so." *Id.* at *4. This language is not dissimilar to the present rule. *See* TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 1.09(b) ("A lawyer shall not knowingly represent a person in the same or a substantially related matter in which a firm with which the lawyer formerly was associated had previously represented a client.").

In any event, examining the plain meaning of the word "associated," the appellate court held that the term encompassed "not only partners, employees, and associates

19

within the same firm, but individuals working together on a case or issue regardless of their actual status as a member of the firm, of-counsel, or co-counsel." *In re CMH Homes, Inc.*, 2013 WL 2446724, at *5. The appellate court thus concluded that based on the "presumption of shared confidences," the county attorney's involvement "necessitated" the disqualification of outside counsel. *Id.* at *7. According to the court, "although the actual sharing of confidential information might not have occurred, the presumption is irrebuttable and the appearance of impropriety is too great." *Id.* The majority opinion drew a spirited dissent asserting, in relevant part, that, "[t]he Texas Supreme Court has not recognized an irrebuttable presumption of client confidences between co-counsel." *Id.* at *10 (Martinez, J., dissenting).

We do not read *American Home Products* as narrowly as did the majority opinion issued by the Fourth Court of Appeals. There, the users of a product brought several cases against the distributor of the product, and the distributor filed motions to disqualify two of the law firms representing the users because, in relevant part, one of those firms retained a legal assistant who had previously worked for counsel for the distributor. *See In re Am. Home Prods. Corp.*, 985 S.W.2d at 71. The supreme court held that the trial court abused its discretion in failing to disqualify the law firm that hired the legal assistant because that firm failed to properly screen the legal assistant from the litigation. *Id.* at 72–77. However, the supreme court concluded that the trial court did not abuse its discretion by denying the motion for disqualification of co-counsel. *Id.* at 72, 79–82. The court considered the presumption that the hiring law firm possessed the distributor's confidential information, and addressed the users' contention that co-counsel "cannot be

disqualified without unwisely and improperly applying the concept of double imputation."

*Id.* at 79. In addressing this issue, the supreme court discussed re-imputation in cases involving "tainted counsel" and co-counsel, and cases involving movement of counsel from one firm to another. *Id.* The supreme court reasoned as follows:

> The question is whether there should be any presumption that the lawyer who employed the nonlawyer shared imputed knowledge with co-counsel.
>
> We share the concern expressed by the Fifth Circuit . . . that re-imputation of knowledge could lead to an unending and unwarranted string of disqualifications. At the same time, we are mindful of the concerns discussed in our decisions . . . regarding the inability of a client in many situations to prove that its confidences were actually revealed. We conclude that the proper balance is to place a burden of producing evidence of non-disclosure on the party resisting disqualification once the requisite showing has been made by a party seeking disqualification. A party seeking disqualification must first demonstrate that there were substantive conversations between disqualified counsel and co-counsel, joint preparation for trial by those counsel, or the apparent receipt by co-counsel of confidential information. A rebuttable presumption then arises that disqualified counsel shared confidential information with co-counsel.
>
> The party resisting disqualification of co-counsel may rebut this presumption by providing probative and material evidence that the tainted person . . . did not disclose confidential information of his adversary.

*Id.* at 81 (internal citations omitted).

We examine the record considering this holding. Worthington prepared an affidavit in support of Landa's response to Palomo's motion to disqualify. Worthington testified in relevant part that:

> 2.    [Peralez] and I did not jointly prepare this case for trial, nor did we have any substantive communications regarding this case.
>
> 3.    I have never had any substantive communications with [Peralez] concerning the mediation of Cause No. C-4651-16-D, Annabelle Palomo-Rodriguez v. Michael Palomo (in which [Peralez] was the mediator) that took place in October of 2018.

21

4.      [Peralez] has never disclosed to me or anyone else in my firm any information of any kind pertaining to the mediation of the prior case (Cause No. C-4651-16-D). We have had no conversations or communications of any kind concerning that mediation, and he has not disclosed any information derived from or relating to it, including but not limited to, any confidential reports, discussions and communications with the parties or their attorneys, or any documents that were transmitted or involved in the mediation. Further, I did not ever have access to any confidential or substantive information concerning the prior case or its mediation through [Peralez].

Here, Palomo's assertions that Worthington should be disqualified are premised solely on his appearance on Landa's pleadings along with Franz and Peralez. She has not demonstrated that there were substantive conversations between Peralez and Worthington, or Franz and Worthington, joint preparation for trial by those counsel, or the apparent receipt by Worthington of confidential information. *See id.* And, even if she had, Worthington's testimony would rebut any presumption that disqualified counsel shared confidential information with him. *See id.*

Based on the foregoing, we conclude that the trial court did not err in refusing to disqualify Worthington and his firm. We overrule Palomo's second issue.

### V.      CONCLUSION

The Court, having examined and fully considered the petition for writ mandamus, Landa's response, and Palomo's reply, is of the opinion that Palomo has met her burden to obtain mandamus relief, in part, as discussed herein. Accordingly, we lift the stay previously imposed in this case. *See* TEX. R. APP. P. 52.10. We conditionally grant the petition for writ of mandamus, in part, and we direct the trial court to vacate its order of February 27, 2025, as to the disqualification of Franz and the law firm of Peralez Franz,

22

LLP, and to enter an order granting disqualification. We deny the petition for writ of mandamus in part, as to Palomo's motion to disqualify Worthington and the law firm of Ramon Worthington Nicolas & Cantu, PLLC. Our writ will issue only if the trial court fails to act in accordance with this memorandum opinion.

CLARISSA SILVA
Justice

Delivered and filed on the
29th day of August, 2025.